## ENGLER v. WESTERN UNION TEL. CO.

### (Circuit Court, D. Nevada. July 15, 1895.)

### No. 592.

PERSONAL INJURIES—EXCESSIVE DAMAGES—NEW TRIAL.

Plaintiff received a compound comminuted fracture of the ankle bones of one leg. The foot was doubled over, and the bones protruded through the flesh. Over 100 pieces of the denuded bones were at various times taken out, and more than 20 months after the injury bones were still working out. During all this time he suffered intense and constant pain. He was confined in bed for six months, and for the first half of that time was obliged to lie on his back. In the opinion of the testifying physician, he would be well and out of pain in three months from the trial. He will always be lame, the ankle will be stiff, and there will be a slight deformity of the foot. His doctors' bills were $1,545, and expenses for nurses $800. At the time of the injury he was personally engaged in conducting an hotel, and by reason of the injury was compelled to employ a suitable person to take charge of it. *Held* that, the instructions having been proper, and there having been no attempt at the trial to magnify or exaggerate the injury or pain, and there having been no appeal to the passions, prejudices, or sympathy of the jury, and nothing at the trial to indicate that the jurors were influenced by any such feelings, a verdict for $15,000 damages was not so great as to make it appear that it had been given under the influence of passion and prejudice.

Action by Louis Engler against the Western Union Telegraph Company for personal injuries. There was a verdict for plaintiff, and defendant moves for a new trial.

E. S. Farrington, for plaintiff.

Evans & Rogers and Torreyson & Summerfield, for defendant.

HAWLEY, District Judge (orally). The defendant moves the court for a new trial upon several grounds, but the only assignment of error urged before the court is that of "excessive damages, appearing to have been given under the influence of passion and prejudice."

The facts bearing upon this question are substantially as follows: The plaintiff is 50 years of age. On the evening of July 28, 1893, while taking a buggy ride on a public highway near the town of Tuscarora, in this district, his horses came in contact with defendant's telegraph wire, which had previously fallen down across the road, and there allowed to remain, in such a manner as to cause the horses to become frightened and unmanageable, and resulted in plaintiff being violently thrown out of the buggy and seriously injured. He received a compound comminuted fracture of the ankle bones of the left leg. His left foot was doubled over, both bones protruded through the flesh, and through his leather shoe, into the ground, and were denuded of the periosteum for a space of $4\frac{1}{2}$ inches. The base bone in the heel of the foot was also denuded of periosteum. Over 100 pieces of the denuded bones, some of them quite large, had been, at various times, taken out. More than 20 months after the injury, pieces of the bones were still working out of the foot and matter running from the cavities. During all this time plaintiff suffered intense and constant bodily pain. He was con-

fined to his bed for a period of six months, and for the first three months was compelled to lay on his back, and could not turn over on either side. At the time of the trial he was compelled to use crutches. The physician testified that in his opinion the plaintiff would be well and free from pain or further treatment in about three months. The effect of the testimony as to the future results of the injury is that plaintiff will always be lame, the ankle joint will always be stiff, and there will be a slight deformity of the foot. From the time of the injury up to the time of the commencement of the suit in January, 1894, the doctors' bill for medical attendance amounted to $1,545. The expenses, shown to be actually necessary, for nurses, was over $800. At the time of the injury, plaintiff was personally engaged in conducting and carrying on an hotel and saloon business, and in connection therewith also carried on and conducted a gambling game known as "faro," licensed and sanctioned by the laws of the state. By reason of the injuries, plaintiff was wholly incapacitated from attending to his business for a long period of time, and was compelled to employ a suitable person to take charge of the same. A few months before the trial, plaintiff endeavored to conduct the business himself, but was only able to continue work for about two weeks. The business was shown to be profitable. There was no loss to the business shown, nor was the value or amount of the extra expense incurred in carrying on the business established by any direct evidence. Upon submitting the case to the jury, the court gave the following instructions touching the question of damages:

"If you find for the plaintiff, you should assess his damages at such an amount as, from all the circumstances disclosed by the evidence, would, under your best judgment, be a just, reasonable, and fair compensation to the plaintiff for the injuries sustained by him. And, in determining the amount of damages, you should take into consideration all the facts and circumstances attending the injury, as disclosed by the evidence,—such as the nature and expense of the plaintiff's injuries and bodily pain and suffering he has endured as the result of such injury; any future disability which, from the testimony, you may believe to be the necessary result of, or caused directly by, such injury; and the amount of money necessarily paid by him, or contracted by him to be paid, for medicines or medical attention and services, and for nurses hired in order that he be healed and cured of such injury. The measure and amount of recovery must be confined to what is known in law as 'compensatory damages'; that is, such a fair, reasonable, and just sum as will compensate plaintiff for the injury, expense, and suffering which he has sustained,—no more, and no less. Your attention has been called by counsel to remember, when you go to your jury room, before you have reached a conclusion as to the amount of judgment which plaintiff is entitled to recover, that you must bear in mind the fact that plaintiff is not asking exemplary damages or punitive damages. In cases where the acts of the defendant are malicious, the plaintiff is entitled to recover what is known in law as 'exemplary damages.' Such damages, tending to punish the defendant, you are to avoid taking into consideration. You are to do what is fair, what is right and proper; to look at both sides of this case with reference to the rights of both parties, and to consider what would be fair, what would be just, and what would be a reasonable compensation, which the plaintiff is entitled to recover."

The jury found a verdict in favor of the plaintiff, and assessed the damages at $15,000.

This court in Zion v. Southern Pac. Co., 67 Fed. 500, announced the general rules which should govern courts in deciding motions upon the question of excessive damages, and it is deemed unnecessary to again repeat them.

The question whether the amount of damages allowed in this case is excessive must be determined by the knowledge, judgment, and sound discretion of the presiding judge. Every case must necessarily depend, to a great extent, upon its own peculiar facts. An examination of the decided cases in actions to recover damages for personal injuries clearly shows that the courts have differed in opinion as much as juries, as to the amount of damages that should be allowed in such cases. Extreme cases are found in the books upon both sides of this vexed question. The tendency of some of the state courts is to allow only small damages. Other states are more liberal. What is considered as proper in one state is deemed excessive in another. The argument that juries in this state are disposed to give heavy damages in actions for personal injuries against corporations is undoubtedly true. But the records of this court will show that it has never hesitated, where the amount was deemed excessive, to set such verdicts aside. The amount allowed by the jury in the present case was large; but the injury was severe, and the bodily pain intense and continued for a long period of time. The plaintiff was present in court. The condition of his foot was plainly to be seen, and, with the testimony of his physician, the nature and extent of the injury and of the bodily pain suffered by the plaintiff was clearly and intelligently presented to the jury. The injury and the pain were real. No attempt was made at the trial to magnify or exaggerate either the injury or the pain, as is sometimes, in bad taste, attempted to be done in cases of this character. No appeal was made to the jurors to arouse either their passions, prejudices, or sympathy. There was nothing at the trial in the acts or conduct of the jury, or of any juror, to indicate in any manner that they were influenced or controlled by any such feeling. In the very nature of the case, there is no precise rule for estimating damages for bodily pain and suffering. The amount cannot be arrived at with any degree of mathematical certainty. Some latitude must be allowed to the sound sense and honest judgment of an impartial jury. It is, perhaps, safe to say that no 12 men could ever be selected, however fair and unprejudiced they may be, who would, at first blush, name the same amount. It requires time for deliberation and the exercise of reason and judgment upon the part of each individual juror, and consultation with others upon the facts, to arrive at a satisfactory verdict.

In The City of Panama, 101 U. S. 453, 464, the court said:

"Damages in such a case must depend very much upon the facts and circumstances proved at the trial. When the suit is brought by the party for personal injuries, there cannot be any fixed measure of compensation for the pain and anguish of body and mind, nor for the permanent injury to health and constitution; but the result must be left to turn mainly upon the good sense and deliberate judgment of the tribunal assigned by law to ascertain what is a just compensation for the injury inflicted."

The same general principles have been announced by the supreme court of this state. Solen v. Railroad Co., 13 Nev. 137; Wedekind v. Railroad Co., 20 Nev. 301, 21 Pac. 682.

The jury in the present case must have understood the principles upon which the damages were to be estimated and arrived at. There was no attempt upon the part of counsel to either mislead or confuse the jury upon this question. The instructions of the court upon this point were plain, and unquestionably as favorable to the defendant as the law would warrant. It is well settled that the plaintiff in such an action is entitled to recover for such future suffering and disability as is manifestly the inevitable and necessary result of the injuries received. Railroad Co. v. Harmon, 147 U. S. 571, 584, 13 Sup. Ct. 557; Railroad Co. v. Stoner, 49 Fed. 209, 1 C. C. A. 231, 4 U. S. App. 109; Railway Co. v. Jones, 49 Fed. 343, 1 C. C. A. 282, 4 U. S. App. 115; Eddy v. Wallace, 49 Fed. 801, 1 C. C. A. 435. The amount of the verdict, large as it is, when considered in the light of all the facts and circumstances of this case, is not so great as to convince the court that it must have been given under the influence of passion or prejudice. I am of opinion, from my observation at the time of the trial, as well as from an examination of the evidence, that the verdict was the result of the calm and unprejudiced judgment of 12 intelligent and fair-minded jurors, reached, after a careful deliberation of the facts, upon the principles announced by the court, wholly uninfluenced by any other consideration, and that it is not inconsistent with the exercise of an honest, fair, and impartial judgment upon the part of the jury, whose special province it was to determine the amount. The verdict of the jury will not be disturbed.

A review of the authorities cited by counsel would serve no useful purpose. It is enough to say that they have been carefully examined, and that the views herein expressed and the conclusion reached are fully supported and sustained by the following cases: Solen v. Railroad Co , supra; Morgan v. Southern Pac. Co., 95 Cal. 508, 30 Pac. 601; Railroad Co. v. Reese, 5 C. C. A. 510, 56 Fed. 289; The City of Panama, supra; Railroad Co. v. Thompson, 64 Miss. 585, 1 South. 840; Rockwell v. Railroad Co., 64 Barb. 438, 53 N. Y. 625; Gale v. Railroad Co., 13 Hun, 4, 76 N. Y. 594; Mitchell v. Railroad Co., 70 Hun, 387, 24 N. Y. Supp. 32; Solarz v. Railway Co. (Super. N. Y.) 29 N. Y. Supp. 1125; Railway Co. v. Porfert (Tex. Sup.) 10 S. W. 213. Motion for new trial denied.