## MAHER v. UNION PAC., D. & G. RY. CO. et al.

(Circuit Court of Appeals, Eighth Circuit. January 24, 1901.)

No. 1,460.

MASTER AND SERVANT—RAILROADS—FELLOW SERVANTS—NEGLIGENCE—RECOVERY PRECLUDED

Plaintiff was injured while a fireman on a passenger train, by collision with a freight train, which was backing onto the main track from a siding. Both the freight and passenger were running in the same direction, and both were late, in accordance with the order of the train dispatcher. The freight train reached the station where it took the siding 13 minutes before the passenger was scheduled to arrive, and there orders were received that the passenger was to run 30 minutes late to the next station. Without protecting the rear end of the train with a flag, or sending a brakeman back to warn approaching trains, the conductor of the freight train commenced to back his train onto the main track 5 minutes after the passenger was due to arrive, and the passenger train, coming around a curve in a deep cut from which a view of the freight train was excluded, and approaching the station to receive its further orders, collided with the freight train. A rule of the company required trains of an inferior class to keep 10 minutes off the time of a train of a superior class following it. *Held*, that as the negligence was that of the engineer and conductor of the freight train, and not that of the train dispatcher, a recovery was precluded, since the injury was caused by the negligence of a fellow servant.[1]

In Error to the Circuit Court of the United States for the District of Colorado.

J. M. Washburn, for plaintiff in error.

Elmer E. Whitted (Tyson S. Dines, on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. Dennis A. Maher, the plaintiff in error, was a locomotive fireman on passenger train No. 2 on the Union Pacific, Denver & Gulf Railway, operated at the time by Frank Trumbull as receiver. On the 3d day of August, 1894, passenger train No. 2 and fast freight train No. 12 were running northward on the same track from Texline, N. M., to Trinidad, Colo.; and at Folsom, N. M., train No. 2 ran into the rear of train No. 12 while the latter train was backing from the siding out onto the

---

[1] Liability of carriers for injuries caused by negligence of servants, see notes to Texas & P. Ry. Co. v. Williams, 10 C. C. A. 466; The Anchoria, 27 C. C. A. 651.

# 310

main line, and as a result of the collision the plaintiff's legs were cut off, and this action is brought to recover for that injury. The court below, at the close of all the evidence in the case, directed the jury to return a verdict for the defendants.

The case turns upon a 'single question, namely, whether the collision in which the plaintiff received his injury resulted from the negligence of the conductor and engineer on train No. 12, or from some fault or error in the orders of the train dispatcher to the conductors and engineers of these two trains. If the collision resulted from the negligence or error of the train dispatcher, the defendants are liable (Railway Co. v. Elliott, 42 C. C. A. 188, 102 Fed. 96, and cases there cited); but, if it was occasioned by the negligence of the conductor and engineer on train No. 12, they are fellow servants of the plaintiff (Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772; Railroad Co. v. Charless, 162 U. S. 359, 16 Sup. Ct. 848, 40 L. Ed. 999; Same v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994); and by the law of the place where the collision occurred defendants are not liable to the plaintiff for their negligence (Lutz v. Railroad Co., 6 N. M. 496, 30 Pac. 912, 16 L. R.. A. 819; Dennick v. Railroad Co., 103 U. S. 11, 26 L. Ed. 439; Railroad Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829; Railroad Co. v. Babcock, 154 U. S. 190, 14 Sup. Ct. 978, 38 L. Ed. 958).

The orders issued to the conductors and engineers of these trains by the train dispatcher are as follows:

"Order Number One.

"For Texline. Conductor and Engineer of Trains Nos. 2 and 12: Train No. 2 will run one hour late Texline to Folsom. Complete 1:55 a. m., No. 12, Grove and Miller; complete 5:20 a. m., No. 2, Mabie and Hinchcliff."

"Order Number Four.

"For Clayton. To Conductor and Engineer Trains Nos. 12 and 2: Order No. 1 is annulled. No. 2 will run one hour and thirty minutes late Clayton to Folsom. M. F. E. Train 12, Grove and Miller, complete 3:01 a. m. Train No. 2 complete, Mabie and Hinchcliff, 5:45 a. m."

"Order Number Eight.

"For Folsom, N. M. To Conductor and Engineer of Nos. 2 and 12: No. 2 will run two hours late Folsom to Trinchera. M. F. E. [Signed] Grove and Miller, Conductor and Engineer."

These orders are shown by the testimony to be in the usual and proper form, free from conflict, and plain and unambiguous in their directions. The schedule time for train No. 12 at Folsom was 6:10 a. m. It arrived there at 7:05, and stopped on a siding to report and receive orders, and while there did receive order No. 8. The schedule time for train No. 2 at Folsom was 5:48 a. m., and under order No. 4, directing it to run 1 hour and 30 minutes late from Clayton to Folsom, it was due to arrive there at 7:18 a. m., and it did arrive at 7:25. The fact that No. 2 was, under order No. 4, due at Folsom at 7:18, was known to the conductor and engineer of train No. 12. That was plain and unmistakable from the order they had received, and with full knowledge of this fact, and without protecting the rear of their train by a flag or otherwise, in some sufficient manner, as common prudence as well as an express rule of the com-

pany required them to do, they commenced to back their train from the siding onto the main track at 7:23, and the train was still backing when No. 2, coming around a curve in a deep cut, which excluded No. 12 from view, ran into the rear of that train.

At the time the collision occurred No. 12 was backing onto the main line on the time of No. 2, which might be expected at any moment, and this was done without sending a brakeman or flagman the regulation distance, or any distance, to the rear to flag the incoming train. The train dispatcher was in no manner responsible for this culpable negligence. Order No. 8 did not cancel order No. 4, but fixed the arriving time of No. 2 between Folsom and Trinchera at two hours later than its schedule time. The "two hours late," mentioned in order No. 8, is not two hours late from Clayton to Folsom, but from Folsom to Trinchera, and it cannot be construed as authorizing the conductor of No. 12 to assume that No. 2 would arrive at Folsom two hours late, or 30 minutes later than the time fixed in order No. 4. He knew, moreover, that the conductor and engineer of No. 2 had not received order No. 8, and would not receive it until their train reached Folsom. When the conductor of No. 12 received order No. 8, he had an undoubted right to move his train out on the main track, and go forward to Trinchera, knowing that he had 30 minutes to make that station ahead of No. 2. But this order did not authorize him to back his train onto the main track on the time of No. 2 at Clayton, under order No. 4, without taking the usual and necessary precautions to prevent a collision. Moreover, there was a rule of the company providing that "a train of inferior class must in all cases keep out of the way of a train of superior class," and another rule providing that "a train of inferior class must keep ten minutes off the time of a train of superior class following it." These rules were disregarded by the conductor and engineer of train No. 12, which was, within the meaning of these rules, "a train of inferior class" to No. 2.

The train dispatcher did not give any orders to the conductor of No. 12, regulating the movement of his train at Clayton station. How he should move his train there, and whether he should head out or back out of the siding, and what precautions he should take to prevent a collision while moving his train onto the main track, were matters of detail, concerning which it was the duty of the conductor to conform to the usage and practice in such cases and the rules of the company. Such matters of detail are not regulated, and cannot be regulated, by orders from the train dispatcher. All orders emanating from the train dispatcher are to be received and read in the light of these well-known rules for the movement of trains at stations on and off the sidings, and for the violation of such rules the train dispatcher is not to be convicted of negligence. There is no conflict in the testimony, from which it clearly appears that the cause of the collision was not any fault, error, or negligence on the part of the train dispatcher, for whose negligence the defendants would be liable, but that it was due solely to the negligence of the conductor and engineer of train No. 12, who were fellow servants of the plaintiff under the rules now established by the supreme court of the

United States, and for that reason the defendants are not liable to the plaintiff for the results of their negligence. It is conceded that the plaintiff was in the strict line of his duty when he received his injury, and nothing but the common-law fellow-servant doctrine, as that doctrine is construed by the supreme court of the United States, stands in the way of his recovery. That rule is, in the judgment of the writer of this opinion, extremely unjust. This case affords a striking illustration of its cruel injustice. But the rule is too firmly rooted in our federal jurisprudence to be changed otherwise than by legislation. It has been abrogated in a good many jurisdictions, and, in the opinion of the writer, ought to be abrogated in all. The judgment of the circuit court is affirmed.