## SOUTHERN RY. CO. v. CRAIG.

(Circuit Court of Appeals, Fourth Circuit. February 4, 1902.)

### No. 404.

1. MASTER AND SERVANT—RAILROAD TRAINS—MODE OF OPERATION—AVOIDING COLLISIONS BETWEEN TRAINS—ORDINARY CARE.

Plaintiff's intestate, a railroad conductor on an extra train, had orders to precede a delayed regular train into defendant's yards. No instructions were given to look out for any other train on entering the yards. Intestate was killed in a collision with a switching engine in the yards. No notice of the approach of the extra train had been given to those on the switch engine. The company's rules, known to intestate, gave the right of way to switch engines in the yards, and required that extra trains must approach and run through yard limits under full control. The evidence as to whether intestate's train was under full control was conflicting. The night of the accident was shown to have been dark and foggy. *Held* that, notwithstanding the rules of the company, it was the duty of the crew of the switching engine to exercise ordinary care in avoiding collisions with incoming trains.

2. SAME—ORDINARY CARE—INSTRUCTIONS.

An instruction that the crew of the switching engine should take proper precautions against collisions with incoming trains, the character of such precautions to be determined by the circumstances of the night, the heavy fog, and the difficulty in hearing and seeing signals, was correct.

3. SAME—OBSERVANCE OF RULES—QUESTION FOR JURY.

The question as to whether intestate observed the rule of having his train under full control on entering the yards was for the jury.

4. SAME—EXCESSIVE DAMAGES—APPEAL.

Where, in an action for the death of plaintiff's intestate, the instructions are proper, and the record shows no attempt to magnify the injury or pain, nor any appeal to the passion, prejudice, or sympathy of the jury, nor indication that the jurors were so influenced, the appellate court will not disturb a verdict on the ground of excessive damages.

In Error to the Circuit Court of the United States for the District of South Carolina, at Columbia.

Thomas P. Cothran, for plaintiff in error.
J. E. McDonald, for defendant in error.

Before GOFF, Circuit Judge, and MORRIS and BOYD, District Judges.

BOYD, District Judge. This action was commenced in the court of common pleas for Fairfax county, in the state of South Carolina, to recover damages for the death of Laurence S. Harrison, the intestate of Craig, the defendant in error, alleged to have been caused by the negligence of the plaintiff in error on the 15th of November, 1899. Upon petition of the plaintiff in error, the Southern Railway Company, the case was removed to the circuit court of the United States for the district of South Carolina for trial. A trial was had before Simonton, circuit judge, and a jury, at Columbia, S. C., on the 13th and 14th days of December, 1900, and a verdict for $12,500 returned by the jury in favor of the administrator, and judgment was thereupon rendered by the court for said sum as

damages against the plaintiff in error. The case comes here for review upon a writ of error sued out by the railroad company.

Harrison, the intestate of the administrator, Craig, was in the employment of the Southern Railway Company as a conductor, and on 15th of November, 1899, was in charge of a ballast or gravel train on the railroad of the company. Intestate's train was numbered and called "Extra 555," that being the number of the locomotive attached to it and operated by J. W. Fetzer, engineer. During the afternoon of the 15th of November, 1899, Extra No. 555 was engaged in work along the line of the Southern Railway near a place called "Pomaria," about 30 miles from Columbia. At 8:22 p. m. on the said day an order was issued by the railway company's superintendent, and received by intestate and his engineer, directing them to run Extra 555 from Pomaria to Columbia. At Allston, a station on the route from Pomaria to Columbia, an order was received by intestate and his engineer, at 9:02 p. m., to the effect that their train would run ahead of train No. 62, the latter being a regular passenger train, due at Columbia at noon that day, but which was more than 10 hours late. On the way from Allston to Columbia, at Bookman's, at the request of the engineer, who had been recently employed by the railway company, and who was new upon the yard and block system, the intestate left his caboose, and went upon the locomotive to pilot the engine through the yard at Columbia. Extra 555, consisting of 17 cars, loaded with ballast, drawn by the locomotive in charge of Fetzer, reached Columbia at 10:55 p. m. The night was very dark and foggy, and as Extra 555 was moving into Columbia on the main track, and having entered the limits of the yard, the switch engine which was being operated on the yard, whilst running backward, pulling a number of cars from a side track onto the main line, collided with intestate's train, and he was killed in the collision. There was conflict of testimony as to the rate of speed at which the two trains were running when the collision took place. Fetzer, the engineer on Extra 555, testified that his train was running at about 4 miles an hour; that he had it under full control; and that, from the way the engines came together, it was his opinion that the speed of the switch engine at the time was 12 or 15 miles an hour. The fireman on Extra 555 testified that he was on the train, and that it was running 10 miles an hour; and Hart, the flagman on the same train, testified that it was running 15 miles an hour. Foulke, the engineer, and Stevens, the fireman, on the switch engine, both testified that its speed was only 4 or 5 miles an hour. Extra 555, as it approached the place of collision, was coming up a heavy grade, and as it entered the yard at Columbia it made no stop to ascertain if the track was clear, and no torpedoes were set or flagmen stationed to notify the extra not to proceed. As the extra was running on the main line after it entered the yard limits, the engineer, Fetzer, saw the light of the switch engine coming backward, running onto the line, about 50 yards in front, and he then put on the emergency air brakes, blew his whistle, and reversed his engine, but this was too late to prevent the collision. The operator of the switch engine was

not notified by the superintendent that Extra 555 was coming. There was a rule of the company which gave the switch engine the right of way within the yard limits in Columbia over all trains except regular trains, and it was shown upon the trial that intestate had notice of this rule. There was also a rule of the company that extra trains must approach and run through yard limits under full control. Intestate also had notice of this rule.

At the close of the testimony the counsel for plaintiff in error requested the court to instruct the jury as follows:

"Under the rules the switch engine had the right to the use of the main line, protecting itself against only regular trains. The extra was required to proceed through the yard under full control. This requirement applied, not only to the speed of the train, but to such precautions in addition as the dark and foggy night demanded. The switch engine, having the right of way over the extra, it was the duty of the other to be on the lookout for the switch engine, and to take such precautions as the situation demanded to prevent a collision."

The court responded to the said request for instructions as follows:

"Yes, but it did not relieve the switching engine from the exercise of ordinary care in avoiding collisions with trains entering the yard."

To this instruction modifying the defendant's said request the defendant duly excepted before the jury retired. The defendant further requested the court to instruct the jury as follows:

"The rules of the company do not require notice of the movements of extra trains to be given to the crew of a switch engine working within the yard limits, and it is not negligence on the part of the defendant not to have given such notice."

The court charged said request for instructions, but added the following:

"But the crew of the switching engine should take all proper precautions against collisions with trains entering the yard, the character of these precautions to be determined by the circumstances of the night, the heavy fog, and the difficulty in hearing and seeing signals."

To this instruction modifying the defendant's said request the defendant duly excepted before the jury retired.

After the verdict the defendant moved for a new trial upon the following grounds: (1) That the collision was due to the negligence of the engineer of the extra engine, a fellow servant of the intestate; (2) that the court erred in instructing the jury that the switch crew should have taken precautions against the approach of the extra train, owing to the darkness and foggy condition of the weather; (3) that the damages were excessive. The court overruled the motion, saying, as to (1): It was a question of fact about which the court had been unable to form a pronounced opinion, and on that account would not disturb the verdict. (2) Notwithstanding the rule requiring extra to look out for all extra trains, it was the duty of the switch crew, owing to the existing conditions, the fogginess of the night, etc., to observe ordinary care and precautions so as to prevent collisions with incoming trains. This duty was imposed upon them by the law, independent of any rule

of the company. (3) That, but for the decision of the supreme court of the state of South Carolina in case of Nohrden v. Railroad Co., 59 S. C. 87, 37 S. E. 228, holding that damages for wounded feelings could be recovered, he would have reduced the verdict. To which refusals and rulings the defendant duly excepted.

We find no error in the modifications made by the court in giving the instructions requested. After giving the first instruction requested, the court simply said, in substance, that it was the duty of the switching engine to exercise ordinary care in avoiding collisions with trains entering the yard. We cannot conceive of any circumstances under which the operators of a railroad train are relieved from the use of ordinary care to prevent collisions with other trains. This is a duty that devolves upon those running and operating trains at all times. What constitutes ordinary care depends upon the relationship of the parties and the circumstances under which they act, and what would be ordinary care or common prudence under certain conditions would not be under others. It would certainly be incumbent upon the operator of a switching engine moving in a railroad yard, where regular and extra trains are coming and going, to observe a greater degree of caution on a dark, foggy night, when sounds are less distinct, and signals more difficult to be seen, than on a clear night, when such conditions do not prevail; and we therefore think that the second instruction requested, as modified by the court to the jury, was also properly given.

Intestate had orders from the superintendent of the company to proceed with his train to Columbia ahead of No. 62, a regular train, which was belated; and it was the duty of the intestate and his engineer, Fetzer, to obey this order. It was not indicated to them that it would be necessary to look out for any other train or for anything to impede their entrance into Columbia upon the main line, observing the rule, however, that they must approach and run into the yard limits under full control. As to whether intestate observed this rule or not is a question about which there was a conflict of testimony, and which was properly left to the jury to determine.

The only question further for our consideration is that involved in the motion for a new trial on the ground that the damages awarded by the jury are excessive. It is a general principle that an appellate court will be very reluctant to substitute its judgment for that of the jury of the court below, where the judge presiding at the trial has refused to disturb a verdict on account of the amount of the recovery. 8 Am. & Eng. Enc. Law, p. 629. The instructions having been proper, and there having been no attempt, so far as the record shows, at the trial, to magnify the injury or pain, and there having been no appeal to passion, prejudice, or the sympathy of the jury, and nothing at the trial to indicate that the jurors were influenced by any such feelings, the appellate court will not disturb the verdict. Whether the amount of damages allowed in this case is excessive must be determined by the knowledge, judgment, and sound discretion of the presiding judge. Every case must

necessarily depend to a great extent upon its own peculiar facts. Engler v. Telegraph Co. (C. C.) 69 Fed. 185.

The judgment of the circuit court is affirmed.