## ROSNEY v. ERIE R. CO.

(Circuit Court of Appeals, Second Circuit. January 25, 1905.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—FELLOW SERVANTS.

All of the employés of a railway company engaged in operating either of two colliding trains were fellow servants of a fireman on one of the trains.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 504, 506–509.]

2. SAME—NEGLIGENCE—QUESTION FOR JURY.

In an action for injuries to a locomotive fireman in a collision between his train and a train engaged in switching in a railroad yard, evidence *held* insufficient to require submission to the jury of defendant's alleged negligence in failing to provide sufficient help on the switching train, and in providing a yard crew incapacitated from overwork.

3. SAME—YARD RULES—SUFFICIENCY.

Where a railroad rule provided that yard limits at certain points were designated by signs, and that it would not be necessary for any engine or train occupying the ma·n track inside of the yard limits to be protected by flagmen, except when in the time of a first-class train, it was explicit in meaning, and sufficient to protect a train on the main track within the yard limits of one of the places so designated against collision with a switching train in the yard.

4. SAME—AUTOMATIC COUPLERS—AIR BRAKES—STATUTES.

Act March 2, 1893, 27 Stat. 531, c. 196 [U. S. Comp. St. 1901, p. 3174], as amended by Act March 2, 1903, 32 Stat. 943, c. 976 [U. S. Comp. St. Supp. 1903, p. 367], requiring common carriers engaged in interstate commerce to use automatic couplers and air brakes on engines and cars used in interstate commerce, has no bearing in an action for injuries to a fireman by a collision in a railroad yard, where there was no proof that the engine and cars in collision were used in interstate commerce.

In Error to the Circuit Court of the United States for the Southern District of New York.

A. Delos Kneeland, for plaintiff in error.

Frederic B. Jennings and Winfred T. Denison, for defendant in error.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

COXE, Circuit Judge. The action was brought by the plaintiff, as widow of John H. Rosney, to recover damages for his death which

occurred at 6:40 o'clock on the morning of December 27, 1901, at East Honesdale, Pa., while he was in the employ of the defendant as fireman, by reason of a head-on collision between his engine and another engine belonging to the defendant. The engine on which Rosney was employed (No. 1,314) was engaged in hauling a train of 55 or 60 empty coal cars from Hawley to East Honesdale under orders directing that the engine "run extra" between these places. So far as mechanical means and appliances are concerned this train was in perfect condition. The engine and train were provided with air brakes properly connected and when the train started from Port Jervis, the evening before the accident, the headlight and two classification lights were burning brightly. The train was properly manned: in addition to the engineer and fireman there was a conductor, a flagman and two brakemen, six in all.

The switching train with which the extra freight train collided in the yard at East Honesdale consisted of 13 or 14 loaded cars drawn by engine No. 1,160. The engine was provided with air brakes but the air brakes on the cars were not connected. The crew consisted of an engineer, fireman and two brakemen. The extra freight had just pulled into the yard and had almost come to a standstill at the water tower, where the engineer intended to take water, when the collision occurred. That the engine had almost stopped is demonstrated conclusively by the photographs in evidence which show the engines in collision almost directly opposite the water tower. The switch engine was also moving slowly just before the collision, not exceeding from two to four miles an hour. The impact was not serious, the damage to the engines being comparatively slight and the damage to the cars infinitesimal. The yard rule was as follows:

"Yard Limit at the following named points are designated by Yard Limit Signs: Port Jervis, Lackawaxen, Hawley, East Honesdale and Deposit. It will not be necessary for any engine or train occupying the main track inside of the yard limits to be protected by Flagmen, except when in the time of a First Class Train. All trains must be governed accordingly."

We incline to agree with the statement of plaintiff's brief that "there is not a scintilla of proof that the crew on the train drawn by No. 1,314 were in any wise negligent." The only fault imputed to them is that the headlight was out immediately preceding the collision. On the proof this was a question of fact which, if at all relevant to the decision, should have been submitted to the jury, but in our view it is not material to the present issue. If the light were out it was due to the carelessness of the engineer of the road engine; if it were alight the engineer of the switch engine should have seen it. In neither event can any fault be imputed to the defendant. All of the employés of the defendant engaged in operating either of the colliding trains were co-servants with Rosney. New England Railroad Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181; Northern Pacific Railroad v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009; Northern Pacific Railroad v. Poirier, 167 U. S. 48, 17 Sup. Ct. 741, 42 L. Ed. 72. Therefore, if the collision happened because of the negligence of one or more of these men without contributing fault on the part of the defendant it is manifest that the plaintiff cannot succeed. If, as we have seen, the collision were due to the light being out on engine No. 1,314 that was

the fault of the engineer. It was equally his fault if, after seeing the switch engine, he failed to stop promptly. If the collision were due to the absence of Murtha, the switchman, temporarily, from his post, or to the failure of the engineer or fireman of engine No. 1,160 to see the approaching train or to reverse the engine or apply the air brakes in time, the carelessness must be imputed to these men respectively.

But the plaintiff contends that it should have been submitted to the jury to say whether the defendant was not in fault,—First; in failing to provide sufficient help upon the switching train: second; in providing a yard crew incapacitated from overwork: third; in failing to provide sufficient rules and a proper system for the management of the yard.

In approaching the consideration of these questions, it is wise to bear in mind that in an action by a servant no presumption of negligence attaches from the happening of the accident and that the burden is upon the plaintiff to establish, as an affirmative fact, that the employer has been guilty of fault.

In Patton v. Texas & Pacific R. Co., 179 U. S. 658, at page 663, 21 Sup Ct. 275, at page 277 (45 L. Ed. 361), the court says:

"It is not sufficient for the employé to show that the employer may have been guilty of negligence—the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion."

There is no evidence that the yard crew was insufficient to do the work required. There was an engineer, a fireman and two brakemen. The fact that but one brakeman was aboard at the time of the collision was not the fault of the defendant. The other brakeman had stopped at the depot for a moment but for what purpose is not disclosed. That such a crew was incompetent to do the work in a switching yard where trains are necessarily composed of comparatively few cars and where high speed is impossible, has nowhere been shown. Although the train in question had but 13 or 14 loaded cars it is argued that if there had been another brakeman on the front of the train "this accident would have been averted." The argument in effect concedes the point that two brakemen were sufficient, and two brakemen were provided by the defendant. Whether a second brakeman on the train would have prevented the accident is, of course, conjectural. The train was a short one; it was proceeding at a slow rate of speed and if the engineer had seen the road engine in time, he could, in all probability, by using the air brakes on the engine, have stopped in time, even had there been no brakeman at all on the train. A second brakeman might have assisted in stopping the train if he had seen the other engine in time, but whether he would have done so is wholly problematical. It is enough that there is no evidence that one brakeman was unable to do the work at the Honesdale yard and certainly there is no evidence that two brakemen could not have done the work.

The entire argument of the insufficiency of the crew is based upon the inferences of ingenious counsel unsupported by the evidence. The

same crew had been employed in the yard for a year prior to the accident and it is not pretended that they were incompetent or that there had been the least difficulty in handling the business with promptness, care and prudence.

The case of Flike v. Boston & Albany Railroad, 53 N. Y. 549, 13 Am. Rep. 545 and the similar case of Booth against the same defendant, 73 N. Y. 38, 29 Am. Rep. 97, are not in point. In these cases the defendant was held liable because it sent out regular freight trains inadequately supplied with brakemen on a road where the grades were heavy and where the trains were dispatched only five minutes apart. The trains broke in two, as they were liable to do; the brakemen were unable to control the rear portions and collisions occurred with engines which were following. In the case at bar all these elements are wanting. There is no proof of similar accidents occurring in the Honesdale yard; no proof that two brakemen were unable to control a train of 14 cars, and no proof that the accident was caused by any neglect of duty in this regard on the part of the defendant. Negligence cannot be supported by theories based upon the imagination of counsel.

The argument that the switching crew was incapacitated for performing their duties by long-continued overwork is also based upon inference. It is another instance where theory is opposed, irreconcilably, to fact. One of the witnesses testified that the crew had worked from 16 to 18 hours daily for a month preceding the accident, another, that the average was about 14 hours. But it also appears that, before beginning the trip on which they were engaged at the time of the accident they had been off duty for 12 hours and that they had been allowed an hour each for dinner, supper and at midnight. We are not here concerned with the question whether or not the hours were too long or the work too arduous; the only pertinent question is, were the men unable to discharge their duties; were they asleep, unconscious, dazed or incompetent? Were they incapacitated by overwork either mentally or physically? Not only is there a total absence of proof that they were in this condition, but, on the contrary, the evidence shows that they were all awake, watchful and alert. It may be conceded that 16 hours a day is too long a period for any human being to toil, but it does not follow that one who labors that length of time becomes, by reason thereof, an inefficient workman. In the present instance, so far as we can judge from the testimony, the work was not of a particularly engrossing character, it did not require great physical or mental exertion. It is, however, enough to say that where the undisputed fact appears that the men were wide awake there is no room to indulge in the inference that they were asleep. There is not, so far as the record discloses, the slightest evidence connecting the collision with the previous hours of employment.

Again, it is argued that the yard rule, heretofore quoted, was improper, ambiguous and insufficient. It is urged that it was incumbent on the defendant to provide a safe and intelligible system for the government of its yard and its failure to do so was negligence. The yard rule is clear and explicit: there is no mistaking its meaning. A train occupying the main track within the limits of the yard at Honesdale is not required to protect itself by flagmen except during the time that

a first class train is expected. The extra freight train, therefore, had no right to expect a flagman to give warning of the presence of the switching train on the main track. The absence of a flagman did not indicate a clear track through the yard and each train was required to take notice that another train might be approaching, and proceed with caution. In the absence of proof to the contrary the court cannot say that this rule was unsafe or improper. It had been in use for some time and no accident had occurred because of it, no railroad expert has condemned it, and it appears to be similar in language and identical in principle to rules upheld and commended by the courts in other cases. In making these rules the effort of the railroads unquestionably is to adopt the plan which will afford the surest and safest protection to life and property. The dictates of humanity and self-interest alike impel to this course and the courts are slow to substitute their judgment upon questions of railroad management for the judgment of practical men who have spent their lives in solving such problems. No one can read the rule in question without being impressed with the fact that its purpose was to enjoin the utmost caution upon all trains using the main track in the yard. A first-class train seeing no flag could run through at regulation speed but all other trains were required to slow down and proceed under perfect control. Some of the additions and amendments suggested by counsel are plainly impracticable and have been criticised and rejected by the courts. If the defendant had attempted to make a rule to cover all possible contingencies—such a condition, for instance, as existed on the morning in question, with falling snow and slippery tracks,—it would have resulted, as such attempts generally do, in lamentable failure. An elaborate system of signals by ringing bells, sounding whistles, swinging lanterns and waving flags, designed to cover the erratic movements of switching engines and extra freight trains, would quite likely have tended to complicate and confuse the situation.

In Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758, the Supreme Court says:

"The ringing of bells and the sounding of whistles on trains going and coming, and switch engines moving forwards and backwards, would have simply tended to confusion. * * * It cannot be that, under these circumstances, the defendants were compelled to send some man in front of the cars for the mere sake of giving notice to employés who had all the time knowledge of what was to be expected. We see in the facts as disclosed no negligence on the part of the defendant."

To the same effect are Maher v. Railway, 106 Fed. 309, 45 C. C. A. 301; Southern Railway v. Craig, 113 Fed. 76, 51 C. C. A. 53; Morgan v. Hudson River Railroad, 133 N. Y. 666, 31 N. E. 234; Berrigan v. N. Y., L. E. & W. R. Co., 131 N. Y. 582, 30 N. E. 57; Little Rock v. Barry, 84 Fed. 944, 28 C. C. A. 644, 43 L. R. A. 349.

Counsel for the plaintiff has shown great industry in collecting authorities bearing upon the duties of the master to his employés, but we think that none of them would have justified the trial court in holding that the yard rule was inadequate or improper, or in submitting the question of its inadequacy to the jury. There was nothing to show that the rule had been ineffectual in the past and no testimony that the

changes suggested in the brief would have improved it. The court in the Berrigan Case, supra, says:

"In the absence of some proof on the part of the plaintiff that such a rule was in operation by other roads or of persons possessing peculiar skill and experience in the management and operation of railroads to the effect that such a rule was necessary or practicable under the circumstances, or unless the necessity and propriety of making and promulgating such a rule was so obvious as to make the question one of common experience and knowledge, the court is not warranted in submitting such a question to the jury."

In Larow v. N. Y., L. E. & W. R. R., 61 Hun, 11, 15 N. Y. Supp. 384, the court says:

"If the principle involved in this case is to be upheld, it would seem to follow that in every case of an injury to an employé ingenious counsel would be able to invent some rule and claim that it should have been adopted and promulgated by the company, and thus present a question as to the defendant's negligence. * * * I am of the opinion that before a railroad company can be found guilty of negligence in not making and promulgating any certain rule, it must at lease be shown that the rule is practicable, proper, and, if observed, would give reasonable protection to its employés."

No amount of care and caution on the part of the rule maker could have foreseen the unfortunate combination of circumstances which resulted in Rosney's death. The accident happened because of the mistake of the train crews, one or both, which no finite intelligence could have anticipated.

The act of Congress of March 2, 1893, 27 Stat. 531, c. 196 [U. S. Comp. St. 1901, p. 3174], amended March 2, 1903, 32 Stat. 943, c. 976 [U. S. Comp. St. Supp. 1903, p. 367], requiring common carriers engaged in interstate commerce to use automatic couplers and air brakes on engines and cars used in interstate commerce has no bearing upon the present controversy. Assuming that the act applies to cars being shunted about in a switching yard where, from the nature of the business it would be impracticable, if not impossible, to connect up the air brakes, it cannot be invoked in the present instance for the reason that there is no proof that the engine and cars were used in interstate commerce. In Johnson v. Southern Pacific Co. (decided Dec. 19, 1904, by the Supreme Court) 25 Sup. Ct. 158, 49 L. Ed. ——, the engine and car in question were both used in interstate commerce.

It is unnecessary to consider the exceptions to the admission and rejection of testimony as they have no appreciable bearing upon the principal question.

We are clearly of the opinion that the plaintiff has failed to prove any negligence on the part of the defendant.

The judgment is affirmed.