CENTRAL R. CO. OF NEW JERSEY v. YOUNG.

(Circuit Court of Appeals, Third Circuit. November 11, 1912.)

No. 1,632.

1. MASTER AND SERVANT (§ 145*)—DEATH OF SERVANT—RAILROADS—RULES —CONSTRUCTION.

A railroad rule provided that within yard limits yard engines might occupy main tracks, protecting themselves against scheduled trains, and that extra trains must run through the yards under control, looking out

for yard engines and other extras. *Held*, that such rule imposed the duty on the engineer of an extra freight train to run through the yards with his train under control, and relieved the crews of yard engines from the duty of protecting themselves against extra freight trains running through yards, and this, though the condition of the weather made it impossible for the engineer of an extra freight train to see but a short distance ahead of him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 288; Dec. Dig. § 145.*]

**2. MASTER AND SERVANT (§ 142*)—RAILROADS—RULES—REASONABLENESS.**

A railroad rule providing that yard engines in yard limits might occupy main tracks, protecting themselves against scheduled trains, and that extra trains must run through yards under control, looking out for yard engines and other extras, having been adopted by the American Railway Association, and by first-class railroads generally, was reasonable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 285; Dec. Dig. § 142.*]

**3. MASTER AND SERVANT (§ 286*)—RULES—REASONABLENESS—QUESTION FOR COURT.**

Where a railroad has adopted a system of rules, which have been made familiar to its employés, and the road has been operated under them with success, the question of their reasonableness and sufficiency is a question of law for the court, in the absence of any conflict of expert testimony on such question.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

**4. MASTER AND SERVANT (§ 145*)—RAILROADS—OPERATION—RULES—"UNDER CONTROL."**

Where a railroad rule required extra freight trains to run through yards under control, looking out for yard engines and other extras, the words "under control" required the engineer to run at such a speed as would enable him to bring his train to a stop within vision, and this without reference to whether the weather was clear or foggy.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 288; Dec. Dig. § 145.*

For other definitions, see Words and Phrases, vol. 8, p. 7158.]

**5. MASTER AND SERVANT (§ 276*)—INJURIES TO SERVANT—RAILROAD RULES—CUSTOMARY VIOLATION—EVIDENCE.**

Evidence of a discharged brakeman that he had run through railroad yards on extra freight trains on defendant's road in violation of a rule requiring extra freights to pass through railroad yards under control, and that in his experience trains frequently ran through yards without regard to the condition of the weather at 18 to 20 miles an hour, was insufficient to show an established usage of departing from the rule, so as to justify an inference that such departure had been acquiesced in by defendant's superior officers, and that the rule was abrogated, or its operation waived.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. § 276.*]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; James S. Young, Judge.

Action by Martha Young, as administratrix of the estate of Peter B. Young, deceased, against the Central Railroad Company of New Jersey. Judgment for plaintiff, and defendant brings error. Reversed, and judgment ordered entered for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Arthur G. Dickson, of Philadelphia, Pa. (Dickson, Beitler & Mc-Couch, of Philadelphia, Pa., of counsel), for plaintiff in error.

Ulysses S. Koons and Charles F. Gerhard, both of Philadelphia, Pa., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge. The plaintiff below was Martha Young, administratrix of the estate of Peter B. Young, deceased, and the defendant below was the Central Railroad Company of New Jersey. The proceeding was a suit in trespass, to recover for the damages sustained by reason of the death of plaintiff's decedent, alleged to have been caused by the negligence of the defendant.

Peter B. Young, plaintiff's decedent, was an engineer in the employ of the defendant company, and at the time of the occurrences in question, was in charge of an engine hauling extra freight train No. 184 of that company, bound eastward from Haucks, Pa., to Jersey City, N. J. The morning was foggy, so that it was not possible to see in any direction further than three or four car lengths,—that is, from 90 to 120 feet. As Young's train entered the defendant company's yard at Siegfried, Pa., it was running, with steam shut off, at a speed of from 18 to 20 miles an hour, at which speed it could not have been stopped within view of any obstacle on the track. As this extra freight train came within the yard limits, the automatic block signal No. 962 showed clear, which indicated to the engineer that the track in front or to the east of him was at that time unoccupied. Shortly after the train passed this block signal, engine No. 514, then on duty as a yard engine, crossed over from the west bound main track to the east bound main track, on which Young's train was running, the cross over switch being 3,062 feet east of block signal No. 962. Yard engine No. 514 had barely reached the east bound track and was backing eastward, at six to eight miles an hour, when it was overtaken and run into by Young's engine hauling the extra freight No. 184, and was driven backwards down the east bound track 1,985 feet, when the engine of extra No. 184 became derailed. Thereupon, the engineer, plaintiff's decedent, jumped and was killed by the cars behind him piling up on him. The engine remained upright, and the fireman who stuck to his post was uninjured.

[1] When the crew of yard engine No. 514 set the switches for the cross over movement, they saw and heard nothing of the approach of Young's train, which had not whistled at the whistling post 745 feet west of the cross over, and they started to make the cross over movement in reliance upon rule No. 107, promulgated by the defendant company, among other rules, for the government of trains, regular and extra, passing through railroad yards. This rule provides:

"Yard limits will be indicated by yard limit boards. Within these limits, yard engines may occupy main tracks, protecting themselves against scheduled trains. Extra trains must run through yards under control, looking out for yard engines and other extras."

It is admitted that the crew of yard engine No. 514, after making the cross over, gave no signal or other warning of its presence on the east bound track. The setting of the cross over switches would have brought the block signal to the danger position, if it had not already been brought to that position by the passage of Young's train. The block signals were tested after the accident, and found in good working order, and the evidence conclusively established that they were properly placed and in accordance with standard railroad practice.

Witnesses from the New York Central, the Interborough Rapid Transit of New York, the New York, New Haven & Hartford Railroad, and the Baltimore & Ohio Railroad Companies testified to rules and practice on their roads, in reference to yard limits, similar to that of the defendant company. The rules of the Philadelphia & Reading Company were shown to be identical with those of the defendant company, and it was further established that rule No. 107 is a standard rule of the American Railway Association and in force on the principal railroads of the country. At the conclusion of the testimony, on the ground that under rule No. 107 the crew of yard engine 514 were not negligent in failing to put out flags, torpedoes or other signals for the extra freight train, No. 184, and also on the ground that the presence of the yard engine on the main track was one of the risks of employment of plaintiff's decedent which he must be held to have assumed, defendant's counsel requested binding instructions for a verdict in favor of the defendant. The court below refused this request, and submitted to the jury the construction of the rules, and whether the crew of yard engine No. 514 were negligent. The jury brought in a verdict for the plaintiff, and the defendant thereupon made a motion for judgment, non obstante veredicto, as well as a motion for a new trial. Both motions were refused, the court holding that—

"while it was certainly the duty of Young to run through the yard with his engine under control, looking out for yard engines and other extras, the crew of the yard engine was bound to exercise ordinary care to avoid collision with trains entering the yard, and to take proper precautions therefor, the character of these precautions to be determined by the circumstances of the day, the heavy fog, and the difficulty in seeing and hearing signals."

Counsel for the plaintiff, in the brief submitted to us, quotes from the opinion of the court in Little Rock & M. R. Co. v. Barry, 84 Fed. 944, 28 C. C. A. 644, 43 L. R. A. 349, cited by plaintiff in error, the following language of the court:

"The skilled and experienced railroad operators who seem to have developed these rules, are undoubtedly more competent than jurors or judges to select and prepare rules conducive to the safe, economical and prosperous operation of railroads."

He then says:

"As a general proposition of law, this is not for a moment questioned, and though plaintiff's original statement of claim averred that the defendant company did not have proper rules, plaintiff's amended statement of claim specifically struck out the averment as to failure of proper rules and inserted in lieu thereof the allegation, that the crew of No. 514 were negligent in not giving warning of their presence on the east bound main track to Young and his crew."

Nevertheless, the position of the court below, as well as the whole trend of plaintiff's argument is that, though rule 107 properly imposed the duty upon the engineer of the extra train to run through the yard under control, properly interpreted, it either was not meant to relieve the crews of yard engines from the duty of protecting themselves against extra freight trains running within yard limits, or, if it were so meant, the rule was unreasonable.

The questions, then, are, first, what interpretation is to be given to the rule; and second, if it is to be interpreted as being applicable to and as having governed the conduct of the crew of the yard engine on the occasion of this accident, was the promulgation of the rule a sufficient and proper exercise of care and prudence on the part of the defendant in the premises?

There is no difficulty in gathering the meaning of rule 107 as applicable both to extra trains passing through yard limits and to yard engines. It was evidently meant to relieve the crews of yard engines in their constant and necessary movements to and fro, within yard limits, from the necessity of protecting themselves from extra trains passing through such limits, by imposing the absolute duty upon those in charge of said trains, of so running them after entering a yard as to be at all times within control. This rule, thus interpreted, was shown by uncontradicted testimony to have been in force on the principal railroads of the country, and to have been established as a standard rule of the American Railway Association. The practical benefit resulting from operation under it, is obvious. The movements of these drilling or yard engines is so constant, and the attention of their crews to the work in hand so exigent, that a measurable relief from the necessity of protecting themselves while moving on main tracks, would tend to lessen or minimize the distractions of their constantly changing work, and thus make in the direction of safety. Therefore, they are told by this rule that they must protect themselves against scheduled trains, but that they are not required to do so with respect to extra trains passing through yard limits, it being made the duty of the crews, and especially of the engineers of such trains, to run the same under control, which means, as said by one of the expert railroad witnesses, that the engineman must at any time be able to bring the train to a stop within vision of what he can see ahead of him on the track. By this rule, the engineman and conductor of extra trains are told that the responsibility of avoiding collision with what may be ahead of him on the track, within the yard limits, is solely upon themselves.

[2] As was said by the Circuit Court of Appeals for the Second Circuit, in Rosney v. Erie R. R. Co., 135 Fed. 311, 68 C. C. A. 155, in regard to such a rule:

"The extra freight train has no right to expect a flagman to give warning of the presence of the switching train on the main track."

The absence of a flagman, torpedo or other warning does not indicate a clear track through the yard, and the engineer of the extra train is required to take notice that there may be another engine on

the track ahead of him. It is easy to see how, if the rule were otherwise, and there was, as was said by the court below, a duty upon the yard engine to take "proper precautions" to avoid collision with extra trains entering the yard, the safety of operations within the yard would be diminished rather than enhanced. The engineer of the oncoming extra train could hardly fail to rely in some degree (probably in a large degree) upon such precautions, to give him notice of a train or engine on the track ahead of him, and would or might insensibly relax his own vigilance; and such is the opinion of the railroad experts on the effect of the rule in question.

In Little Rock & M. R. Co. v. Barry, supra, Judge Sanborn, in delivering the opinion of the Circuit Court of Appeals for the Eighth Circuit, says, with reference to the facts in that case:

"It does not seem unreasonable to suppose that men who are warned that other trains will pass over the railroad on which they are operating, without notice to them, and that they must watch for and protect themselves against them at all times, would operate their trains with more care and fewer accidents than they would if an attempt were made to notify them of the whereabouts and movements of all trains, in view of the fact that the expectation of such notice might relax their vigilance, and that they would often be in locations where it would be impossible to give them the notices. If experience has proved this supposition to be in accordance with the fact, and has led to the adoption of rules which do not require, but discountenance such notices, because the habit of giving them has been found to increase the number and danger of accidents, as the adoption of these standard rules by so many railroad companies, and the testimony of the experienced witnesses who are operating railroads under them, tend to show, it cannot be said that it was the duty of the defendant to give these notices, nor that its failure to give them was negligence."

[3] When a railroad has adopted a system of rules which have been made familiar to its employés, and its railroad is operated under them with success, in the absence of any conflict of expert testimony on the question of their reasonableness and sufficiency, that question is not to be submitted to the varying determination of juries, as a question of fact, but must be determined as a question of law. This is the position of the Court of Appeals in the case just cited, and is supported by many well considered cases in the state and federal courts.

In the comparatively recent case of Chicago, R. I. & P. Ry. Co. v. Ship, 174 Fed. 353, 98 C. C. A. 257, the Circuit Court of Appeals for the Eighth Circuit, in discussing a rule of the defendant company almost identical in language and identical in meaning with the rule 107, with which we are here concerned, says:

"As in the case of Great Northern Ry. Co. v. Hooker, supra [170 Fed. 154, 95 C. C. A. 410], decided by this court, so in this case, the court (below) seem to leave the interpretation of the rules above mentioned to the jury as a matter of fact. In reference to this practice, the language used by Judge Van Devanter (now Mr. Justice Van Devanter) in the case last cited, is pertinent: 'The trial court treated the interpretation of the rules prescribing the plaintiff's duty in the premises as a question of fact to be determined by the jury. But we are of opinion that it was a question of law to be determined by the court. Not only were the rules in the nature of a written instrument, but they contain no terms, the meaning of which was not made plain by them; and this being so, effect should have been given to the general rule that the interpretation of a written instrument rests with the court

and not with the jury. Bell v. Bruen, 1 How. 169, 183, 11 L. Ed. 89; Goddard v. Foster, 17 Wall. 123, 143, 21 L. Ed. 589; Higgins v. McCrea, 116 U. S. 671, 682, 6 Sup. Ct. 557, 29 L. Ed. 764; Scanlan v. Hodges, 52 Fed. 354, 3 C. C. A. 113; Bowes v. Shand, L. R. 2 App. Cas. 455; 1 Labatt, Master and Servant, § 215. Moreover it is held by this court that the reasonableness of such rules is to be determined by the court as a question of law, and not by the jury as a question of fact. Kansas, etc., Co. v. Dye, 70 Fed. 24, 16 C. C. A. 604; Little Rock, etc., v. Barry, 84 Fed. 944, 28 C. C. A. 644, 43 L. R. A. 349. See also Scott v. Eastern Ry. Co., 90 Minn. 135, 95 N. W. 892; Bailey's Personal Injuries, § 3325. And it would seem that by analogy a like holding should be made when the question is one of interpretation.' "

We think the court below, therefore, construed rule 107 too narrowly, confining its meaning to the injunction laid upon the engineer of the extra train. It has, as we have seen, a wider scope, and was intended to facilitate the operations of yard engines and to protect them more surely, and extra trains as well, by not only commanding the engineer of an extra train to run the same under control, but, by quickening and stimulating his caution in that respect, by giving him no right to expect warnings of any kind from yard engines ahead of him.

[4] It is urged, however, that while this might be the case under ordinary conditions, in which objects could be seen at considerable distance, the fog prevailing on the morning of the accident was an unusual condition, owing to which the range of vision was not more than from 90 to 120 feet, and that therefore, the crew of yard engine 514 should have taken precautions with reference thereto. This condition of fog, however, imposed upon plaintiff's decedent still more emphatically the duty of keeping his train under control. In the testimony of one of the expert railroad witnesses, signal engineer of the New York Central & Hudson River Railroad, we find the following:

"Q. What do you understand running under control to be? A. To enable the engineman to bring the train to a stop within vision. Q. Within vision? A. Yes. Q. Within vision of what? A. Of what he can see ahead of him on the track. Q. And if his vision is limited to three or four car lengths by conditions of the weather, does that have any effect upon the rate of speed at which he may run? A. It does. He must run no faster than he can stop within the space ahead in which he can see. Q. Is that the practice and construction of the rules of your railroad? A. Yes."

Of course, the extent of the range of vision must necessarily be reckoned with in controlling the speed of the train subject to the rule. An extra freight must, in yard limits, be kept within the control of the engineer, whether the range of vision be large or small, and the rule which exempted the yard engine from the necessity of protecting itself by warnings, was not affected by the range of vision due to the conditions of the weather. It is as easy to run "under control" in conditions of fog, as in clear weather.

It is not hard to see what confusion and uncertainty might result from committing to the crews of yard engines the discretion as to when weather conditions did or did not require that they should protect themselves from extra freight trains, by flag, whistles, torpedoes, or other warnings, with the resulting necessity of submitting to the

variant judgment of juries the determination whether, in any given case, the absence of such warnings was evidence of negligence on the part of those in control of such engines.

In Rosney v. Erie R. R. Co., supra, dealing with the effect and operation of such a rule as we are here concerned with, the Circuit Court of Appeals for the Second Circuit thus expresses itself:

"A first class train seeing no flag could run through at regulation speed, but all other trains were required to slow down and proceed under perfect control. Some of the additions and amendments suggested by counsel are plainly impracticable and have been criticized and rejected by the courts. If the defendant had attempted to make a rule to cover all possible contingencies—such a condition, for instance, as existed on the morning in question, with falling snow and slippery tracks—it would have resulted, as such attempts generally do, in lamentable failure. An elaborate system of signals by ringing bells, sounding whistles, swinging lanterns and waving flags, designed to cover the erratic movements of switching engines and extra freight trains, would quite likely have tended to complicate and confuse the situation. In Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758, the Supreme Court says: 'The ringing of bells and the sounding of whistles on trains going and coming, and switch engines moving forwards and backwards, would have simply tended to confusion. * * * It cannot be that, under these circumstances, the defendants were compelled to send some man in front of the cars for the mere sake of giving notice to employés who had all the time knowledge of what was to be expected. We see in the facts as disclosed no negligence on the part of the defendant.' To the same effect are Maher v. Railway, 106 Fed. 309, 45 C. C. A. 301; Southern Railway v. Craig, 113 Fed. 76, 51 C. C. A. 63; Morgan v. Hudson River Ore & Iron Co., 133 N. Y. 666, 31 N. E. 234; Berrigan v. N. Y., L. E. & W. R. Co., 131 N. Y. 582, 30 N. E. 57; Little Rock v. Barry, 84 Fed. 944, 28 C. C. A. 644, 43 L. R. A. 349. Counsel for plaintiff has shown great industry in collecting authorities bearing upon the duties of the master to his employés, but we think that none of them would have justified the trial court in holding that the yard rule was inadequate or improper, or in submitting the question of its inadequacy to the jury. There was nothing to show that the rule had been ineffectual in the past."

The action in this case was brought under the Employer's Liability Act of Congress of April 22, 1908 (35 Stat. 65, c. 149 [U. S. Comp. St. Supp. 1911, p. 1322]), which imposes upon common carriers by railroad "liability for the injury or death of any employé resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier." It is conceded on all hands, that the object of this legislation was to abrogate the doctrine of fellow servant in the case of injuries to employés. But the negligence "of the officers, agents, or employés" is in all cases the negligence of the defendant common carrier. It is not necessary, therefore, to consider separately the point made by the counsel for plaintiff in error, that under the rules and the evidence in the case, the finding of the yard engine on the main tracks, in yard limits, was one of the risks of employment of plaintiff's decedent, which he must be held to have assumed. If the presence of the yard engine on the track under the circumstances testified to was not to be imputed as negligence to the defendant, plaintiff's decedent of course assumed the risk thereof. If, however, its presence there, without warning, was negligence on the part of the defendant, there could be no such assumption of risk, as a servant never assumes the risk of his master's negligence.

[5] It remains only to consider the contention of plaintiff's counsel, that whatever view might be taken of the sufficiency and reasonableness of this rule, there was evidence to show that it was not adhered to in practice. This contention rests upon the testimony of a single witness, a discharged brakeman, who testified that he had run through this or other yards on extra freights and had for a short time been one of the crew on a yard engine; that in his experience, trains frequently ran through the yard, without regard to the conditions of the weather, at the speed attributed to the extra freight on the morning of the accident; also, that yard engines were frequently protected at cross overs by flag or light in the rear of the engine or by a flagman. There was no other testimony upon this point, nor was there any evidence bringing home these departures from or infractions of rule 107 to the knowledge of officers in control of yard operations. It is well settled, upon both reason and authority, that, where there is no evidence showing an established usage of departing from a rule on the part of those whose conduct is regulated thereby, acquiesced in by their superior officers, such rule is not abrogated nor its operation waived. Mere disobedience, at times, of such a rule, by those whom it is intended to govern, without knowledge or acquiescence of superior officers, is not sufficient to take this case to the jury. Among the cases cited in support of this position by the counsel for the defendant, we cite the following: Memphis & Charleston R. R. Co. v. Graham, 94 Ala. 545, 10 South. 283; Francis v. Railway Co., 110 Mo. 396, 19 S. W. 935; Railroad Co. v. Mothershed, 110 Ala. 143, 20 South. 67; Loranger v. Railway Co., 104 Mich. 80, 62 N. W. 137; Sloan v. Railway Co., 86 Ga. 15, 12 S. E. 179; Erie R. R. Co. v. Kane, 118 Fed. 223, 55 C. C. A. 129.

In the view here taken, of the intent and meaning of rule 107, as sanctioned by the practice of well conducted railroads, we are prepared to say that no negligence has been shown on the part of the crew of yard engine 514, in not protecting itself against the oncoming extra freight train 184, by flag, torpedo, or other warning. It was within the intent and reason of the rule that the plaintiff's decedent should not expect such a warning in his passage through the yard limits. As no negligence on the part of the crew of yard engine 514, with reference to the accident, was shown by the evidence, no question in that regard should have been submitted to the jury.

The judgment non obstante veredicto, moved by defendant, should have been granted. The judgment below is therefore reversed, and judgment in favor of defendant is hereby directed to be entered.