## UNITED STATES v. WHEELING & L. E. R. CO.

(District Court, N. D. Ohio, E. D.  June 16, 1908.)†

1. STATUTES (§ 143*)—AMENDMENT—VALIDITY.
   Where an amendatory act merely extends the operation of the original act to additional subjects, the amendatory act, though unconstitutional in part, does not affect the validity of the original act.
   [Ed. Note.—For other cases, see Statutes, Cent. Dig. § 211; Dec. Dig. § 143.*]

2. STATUTES (§ 143*)—AMENDMENT.
   Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), regulating interstate railroad equipment, in so far as it effected equipment, used in intrastate commerce in connection with that used in interstate commerce, was not rendered invalid by the fact that Amendatory Act March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1907, p. 885), construing and applying the act of 1893, was unconstitutional in part.
   [Ed. Note.—For other cases, see Statutes, Cent. Dig. § 211; Dec. Dig. § 143.*]

3. CARRIERS (§ 37*)—INTERSTATE COMMERCE—REGULATION—EQUIPMENT.
   In an action against a railroad company for moving a car in connection with interstate commerce in violation of Safety Appliance Act March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1907, p. 885), it is no defense that the coupling became defective or the grab iron was lost so recently before the time mentioned in the petition as to make it impossible in the exercise of ordinary care to replace or repair it.
   [Ed. Note.—For other cases, see Carriers, Dec. Dig. § 37.*]

4. CARRIERS (§ 37*) — SAFETY APPLIANCE ACT—CARS NOT BEARING INTERSTATE COMMERCE.
   Where a railroad car is regularly used in the movement of interstate commerce, but at the time when a defect constituting a violation of the safety appliance act (Act Cong. March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174] as amended by Act March 2, 1903, c. 976, 32 Stat. 943 [U. S. Comp. St. Supp. 1907, p. 885]), is discovered is empty and not being used for interstate commerce, but is being hauled in a train containing a car loaded with interstate commerce, such car and every car in the train is impressed so far as the requirements of the act are concerned with an interstate character and must be equipped as provided by such act.
   [Ed. Note.—For other cases, see Carriers, Dec. Dig. § 37.*]

William L. Day, U. S. Atty., Thomas H. Garry, Asst. U. S. Atty., and Luther M. Walter, Sp. Asst. U. S. Atty.

Squire, Sanders & Dempsey, for defendant.

TAYLER, District Judge.  The petition in this case in 23 causes of action seeks to recover from the defendant penalties for alleged failures to equip certain cars with couplings and grab irons as required by what is known as the "Safety Appliance Act."  The jurisdictional facts alleged in order to bring the cars referred to within the embrace of the federal act are:  (1) That the car was itself at the time used in interstate commerce; being loaded with some kind of freight originating outside of the state of Ohio, and being carried within it or being destined to some point outside of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
†Received for publication Feb. 10, 1909.

the state; or (2) that it was a car which, being one regularly used in the movement of interstate commerce, was at the time of the violation being hauled in a train containing interstate commerce, one car in the train with it, as for example, Illinois Central 35572, containing baled hay consigned to a point within the state of West Virginia. In the counts referred to by this second proposition, some of the cars are described as being empty and some as being loaded, but it is not charged that the loaded cars contained interstate traffic. I see no distinction, so far as this case is concerned, between the two.

It is objected: (1) That the act is unconstitutional under the rule laid down in the Employers' Liability Cases, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297. (2) That assuming that the cars were originally provided with the safety appliances which the law requires, it does not appear that the condition in which they were at the times named in the petition, respectively, was due to any want of ordinary care. (3) That in the case of empty cars, or cars not loaded with interstate commerce, it does not appear that they were at the time of the existence of the defects being used in interstate commerce. These objections will be taken up in their order.

The law was originally passed March 2, 1893 (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), and, with an amendment or two later adopted and unimportant, so far as this question is concerned, an amendment was passed on the 2d of March, 1903 (Act March 2, 1903, c. 976, 32 Stat. 943 [U. S. Comp. St. Supp. 1907, p. 885]), which provided that the act of 1893, with its amendments, should "be held to apply to common carriers by railroads in the territories and the District of Columbia, and shall apply in all cases, whether or not the couplers brought together are of the same kind, make or type" and "shall be held to apply to all trains, locomotives, tenders, cars, and similar vehicles, used on any railroad engaged in interstate commerce." It is claimed that, since the act of 1903 undertakes to make the act of 1893 apply to trains, locomotives, and so forth used on any railroad engaged in interstate commerce, it extends the operation of the act to subjects over which Congress has no control, and that this is exactly the effect of the decision of the Supreme Court in the Employers' Liability Cases. Many answers suggest themselves to this claim. If the act of 1903 had been incorporated in the original act of 1893, and if it be true that the scope which the act covered was larger than that which Congress had power to legislate upon, and in consequence of that the act should be held unconstitutional because of the impossibility of separation of the unconstitutional part from the constitutional part, still the contention of counsel would not be effective in this case. We have here the act of 1893 in full force and effect with its provisions in no wise diminished or curtailed by the act of 1903. That act of 1903 is as the Supreme Court of the United States declared in Johnson v. Railroad Company, 196 U. S. 1, 25 Sup Ct. 158, 49 L. Ed. 363, affirmative and declaratory, and, in effect, only construes and applies the former act Now, if the former act is construed and applied by a later act (which, of course, involves the proposition that it remains unrepealed), and the later act is unconstitutional,

in that it undertakes to give the former act a wider application than Congress had power to give to it, by what sort of reasoning can it be contended that the former act falls to the ground because it has had plastered upon it by Congress an unconstitutional construction and application? The mere statement of this proposition carries with it · its answer and exhibits its unreasonableness.

But much more may be said in favor of the propriety of this legislation, having in view the decision of the Supreme Court in the Employers' Liability Cases. It is true that the Supreme Court in that case held the employers' liability act (Act June 11, 1906, c. 3073, 34 Stat. 232 [U. S. Comp. St. Supp. 1907, p. 891]) unconstitutional because it made the railroad company liable to any of its employés, without restricting the liability to those who were engaged in interstate commerce; but a parity of reasoning would not require that we should say the same thing of the safety appliance act because it refers to all cars used on any railroad engaged in interstate commerce. It seems to me that in the respect complained of there is no analogy between the decision of the Supreme Court in the Employers' Liability Cases and the theory of the defendant's counsel as to the constitutionality of the safety appliance act. An employé of a railroad company engaged in interstate commerce does not merely because he is such employé sustain the same relation to interstate commerce as a car used on a railroad engaged in interstate commerce sustains to interstate commerce on that road. Certainly the federal government owes no duty to, and has no authority over, an employé of a railroad which is engaged in interstate commerce, if the employé himself is not engaged in the work of interstate commerce. That employé is subject in respect to his relations with the railroad company to the laws of the state in which the service is performed. There is no reason why the power of the state should not be sufficient for his protection, or why the federal government should interfere with respect to that or any other matter relating to that employé in respect to his work with the railroad company, so long as it does not relate to the interstate commerce of the company. But this is not true of a car used by a railroad engaged in interstate commerce. All of the cars used by a railroad engaged in interstate commerce in the natural course of their use are instrumentalities of interstate commerce. Whether they carry interstate traffic themselves or are hauled in a train which contains interstate traffic the effect is the same. They stand in a certain and important relation to that interstate commerce over which Congress has control; and it is quite apparent that Congress in undertaking to determine the manner in which interstate commerce shall be carried on, and especially in making effective the useful and beneficent purpose of providing for the safety of employés, would necessarily have a regard for the cars which the interstate commerce railroad had in use. And thus, discovering a very marked and practical distinction between a car used by an interstate commerce railroad and a person in the employ of an interstate commerce railroad, we see how one in the nature of things becomes properly the subject of federal legislation, while the other, depending upon the character of his work, may

or may not become properly the subject of federal legislation. After all, on this subject of the constitutionality of the act, it seems to me that that question has been fully answered by the determination of the Supreme Court in Johnson v. Railroad Company, supra, wherein it is declared that this act of 1903 only construes and applies the act of 1893, and does not add any new affirmative provision.

As to the second objection, whatever may be the right of the railroad company to defend against the claim made in a suit of this kind by saying that the coupling became defective or the grab iron lost so recently before the time named in the petition as to make it impossible in the exercise of ordinary care to replace or repair, that is purely a matter of defense if it ever can be asserted at all. It cannot be urged in support of a demurrer to the cause of action. If it were not so, it would be practically impossible for proof to be made in any case of a violation of the law. There are approximately two million cars in use by railroads in this country, and, if the contention referred to is sound, it would be necessary in order to sustain a cause of action in cases under this act that proof be made that the appliance was in a condition of unrepair at one time, that it continued to be in that condition of unrepair or in a developing condition of greater unrepair up to another time, the lapse of the intervening time being so great as to show a want of ordinary care on the part of the railroad company. In the meantime the very thing to prevent which the law was passed might occur, to wit, the injury of an employé. The practical administration of justice would be denied, and the real enforcement of the law be impossible if the construction contended for was sound. But it has been held in several cases that, even as a defense on the merits no degree of care, no absence of negligence can excuse for the failure to perform a duty unqualifiedly imposed by statute. And in the recent case of Railway Company v. Taylor, Adm'x (decided May 16th of the present year by the Supreme Court) 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061, the court very pointedly lays the unqualified responsibility upon the railroad for such a condition of unrepair.

As to the third objection: What shall we do in the case of a car which is regularly used in the movement of interstate traffic but at the time when the defect is known to exist is itself not being used for carrying interstate commerce, but is being hauled in a train containing a car loaded with interstate commerce? What is the purpose of the law? Here is a train which is engaged—at least part of it—in interstate commerce, and so long as that is true every car in the train is impressed, so far as the requirements of this act are concerned, with an interstate character. It is a part of the current. The interstate car cannot move except with relation to the empty car. The empty car may at any moment be coupled to the interstate car. A brakeman engaged in performing some duty in respect to the interstate car may be compelled to pass over or use a grab iron on the empty car or couple the empty car to the interstate car. Endless confusion would arise if any distinction was made under such conditions between a car loaded with interstate traffic and an empty car regularly used in the movement of interstate traffic, but at the time unloaded and coupled

to another car actually in use in the movement of interstate traffic. Of course, the same thing must be said of the loaded car, whatever the character of the freight it carries, if it is a car regularly used in the movement of interstate traffic.

It seems to me that from every point of view the objections raised to the several causes of action are not well grounded.

The demurrer is overruled.