UNITED STATES v. ERIE R. CO.

(District Court, D. New Jersey.   January 12, 1909.)

1. RAILROADS (§ 229*)—INTERSTATE TRAFFIC—EQUIPMENT—REGULATION.

The duty imposed on interstate carriers by Act Cong. March 2, 1893, c. 196, § 2, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), prohibiting any such carrier to haul or permit to be hauled or used on its line in interstate traffic any car not equipped with automatic couplers, requires the carrier, not only once to equip a car used in interstate traffic with such coupler, but to keep it so equipped.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

---

**2. COMMERCE (§ 33*)—"INTERSTATE COMMERCE."**

If merchandise is consigned from one point in a state to another point in the same state, but is, during transit, carried through a portion of another state, the transaction constitutes "interstate commerce."

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 26; Dec. Dig. § 33.*

For other definitions, see Words and Phrases, vol. 4, pp. 3724–3731.]

**3. COMMERCE (§ 27*)—SAFETY APPLIANCE ACTS—CONSTRUCTION.**

Act Cong. March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1907, p. 885), declaring that its provisions and those of Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), and Act April 1, 1896, c. 87, 29 Stat. 85, relating to train brakes, automatic couplers, grab irons, etc., shall apply to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce, does not apply to a car not shown to have been ever used or to be intended for use in interstate commerce; Congress having no power to regulate equipment not used or intended to be used in interstate commerce, merely because it may be used on a railroad engaged in interstate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

**4. COMMERCE (§ 27*)—INTERSTATE COMMERCE—REGULATION.**

A railroad company, by engaging in interstate commerce, does not thereby submit all its business concerns to the regulating power of Congress.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

**5. COMMERCE (§ 27*)—INTERSTATE COMMERCE—TRAINS.**

A train, composed of cars some of which are and some of which are not engaged in interstate traffic, is subject to the regulation of Congress; all the cars in the train being required to comply with the safety appliance acts being Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), Act April 1, 1896, c. 87, 29 Stat. 85, and Act March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1907, p. 885).

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

John B. Vreeland, Philip J. Doherty, and Roscoe F. Walter, for the United States.

Collins & Corbin, for defendant.

LANNING, District Judge. This is an action for the recovery of four penalties of $100 each for four alleged violations by the defendant of the safety appliance act of March 2, 1893 (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), as amended April 1, 1896 (Act April 1, 1896, c. 87, 29 Stat. 85), and March 2, 1903 (Act March 2, 1903, c. 976, 32 Stat. 943 [U. S. Comp. St. Supp. 1907, p. 885]). The declaration contains four counts—one devoted to each of the alleged violations. A jury trial was had, at which a verdict was rendered against the defendant on each of the counts. The defendant now applies for a new trial.

The first count relates to a car loaded with poultry, consigned from Suspension Bridge to New York City (both places being within the state of New York), via Jersey City, N. J., and equipped with a defective coupler. The second count relates to another car loaded with

merchandise, consigned from Salamanca to New York City (both places being within the state of New York), via Jersey City, N. J., also equipped with a defective coupler. The third count relates to an empty coal car, hauled on the defendant's road, which is a road engaged in interstate commerce, but not in a train any of whose cars were so engaged, and having a defective coupler. The fourth count relates to an empty flat car regularly used in interstate traffic, and hauled on defendant's road in a train containing interstate traffic, and having no handhold or grab iron on one of its ends.

The second section of the act of March 2, 1893, is as follows:

"That on and after the first day of January, 1898, it shall be unlawful for any such common carrier [that is, any common carrier engaged in interstate traffic] to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

The fourth section of the above-mentioned act is as follows:

"That from and after the first day of July, 1895, until otherwise ordered by the Interstate Commerce Commission, it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars."

The first section of the act of March 2, 1903, is as follows:

"That the provisions and requirements of the act * * * approved March second, eighteen hundred and ninety-three, and amended April first, eighteen hundred and ninety-six, shall be held to apply to common carriers by railroads in the territories and the District of Columbia, and shall apply in all cases, whether or not the couplers brought together are of the same kind, make, or type, and the provisions and requirements hereof and of said acts relating to train brakes, automatic couplers, grab irons, and the height of drawbars shall be held to apply to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce, and in the territories and the District of Columbia, and to all other locomotives, tenders, cars, and similar vehicles used in connection therewith, excepting those trains, cars, and locomotives exempted by the provisions of section six of said act of March second, eighteen hundred and ninety-three, as amended by the act of April first, eighteen hundred and ninety-six, or which are used upon street railways."

After careful consideration of the arguments of counsel, and of the authorities to which they have referred, I have reached the following conclusions:

1. Section 2 of the act of March 2, 1893, requires the common carrier not only once to equip a car used in interstate traffic with couplers of the kind described, but to keep it so equipped. The duty imposed cannot be qualified by saying that the carrier, after having once supplied lawful couplers, is bound to use only a high degree of skill to maintain them in perfect condition. The contention of the defendant that a penal statute must be strictly construed is not violated by such a construction. Anything contrary to this view expressed in United States v. Illinois Central R. Co. (D. C.) 156 Fed. 182, St. Louis & S. F. R. Co. v. Delk, 158 Fed. 931, 86 C. C. A. 95, and in other cases referred to by counsel, must be considered as overruled by the later cases of St. Louis & Iron Mountain Ry. v. Taylor,

210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061, United States v. Atchison, T. & S. F. Ry. Co. (C. C. A.) 163 Fed. 517, United States v. Denver & R. G. R. Co. (C. C. A.) 163 Fed. 519, United States v. Cincinnati, etc., Ry. Co. (decided June 24, 1908, by the District Court for the Northern District of Ohio,[1] and Chicago, Minn. & St. Paul Ry. Co. v. United States (decided November 27, 1908, by the Circuit Court of Appeals for the Eighth Circuit) 165 Fed. 423.

2. If merchandise be consigned from one point in a state to another point in the same state, but is in transit carried through a portion of another state, the transaction constitutes interstate commerce. Hanley v. Kansas City Southern Ry. Co., 187 U. S. 618, 23 Sup. Ct. 214, 47 L. Ed. 333.

3. The first section of the act of March 2, 1903, declaring that its provisions and requirements, and those of the acts of March 2, 1893, and April 1, 1896, "relating to train brakes, automatic couplers, grab irons, and the height of drawbars, shall be held to apply to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce," cannot be constitutionally construed to apply to a car not shown to have been ever used, or to be intended for use, in interstate commerce. Congress has no power to regulate the equipments on cars not used or intended for use in interstate commerce, merely because they may be used on a railroad engaged in interstate commerce. It seems to me, notwithstanding the views expressed by Judge Hundley in United States v. Southern Ry. Co. (D. C.) 164 Fed. 347, and by Judge Tayler in United States v. Wheeling & L. E. R. Co. (opinion of June 16, 1908) 167 Fed. 198, that the principle on which the employer's liability cases were settled (207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297) is applicable here. Congress may regulate interstate, but not intrastate, commerce. It has no more authority to subject a common carrier to liability for failure to observe a regulation intended to apply to all cars used on its road, both those used in interstate and those used in intrastate commerce, than it has to subject such carrier to liability for failure to observe a regulation intended to favor all employés on its road. The doctrine that "one who engages in interstate commerce thereby submits all his business concerns to the regulating power of Congress" is one, said Mr. Justice White (207 U. S. 502, 28 Sup. Ct. 147, 52 L. Ed. 297), that is refuted by the statement of it.

4. It is not necessary to give the first section of the act of March 2, 1903, the unconstitutional construction above suggested. The word "engaged" does not relate to its immediate substantive "railroad," but to the preceding substantives, "trains, locomotives, tenders, cars, and similar vehicles." If a comma be inserted after the word "railroad," as Chief Justice Fuller inserted one after the word "uncoupled" in the second section of the act of March 2, 1893 (see Johnson v. Southern Pac. Co., 196 U. S. 18, 25 Sup. Ct. 162, 49 L. Ed. 363), the meaning is clear, and the language consistent with the subsequent parts of the section. Such construction was suggested in United States v. Chicago & N. W. Ry. Co. (D. C.) 157 Fed. 616.

5. A train, composed of cars some of which are and some of which are not engaged in interstate traffic, is subject to the regulation of

[1] No opinion filed.

Congress. A railway company cannot escape liability by mixing. in the same train, cars engaged in interstate traffic with cars engaged in intrastate traffic. All the cars in such a train must be provided with the automatic couplers and grab irons required by the act of March 2, 1893, for every such car is in fact "used in moving interstate traffic."

6. The evidence relating to the fourth count of the declaration was a question for the jury. Their verdict cannot be set aside as one contrary to its weight.

7. There was no error in the rulings of the court in excluding testimony offered by the defendant.

The result is that the verdicts as to the first, second, and fourth counts will stand. As to those counts the rule will be discharged, and judgment may be entered for the plaintiff on them. As to the third count the rule will be made absolute, the verdict set aside, and a new trial granted.