### ERIE R. CO. v. RUSSELL.

(Circuit Court of Appeals, Second Circuit. December 2, 1910.)

#### No. 62.

1. RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—CONSTRUCTION—CARS BEING "USED."

Under the safety appliance act of March 2, 1893, c. 196, § 2, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), which makes it unlawful for any railroad company engaged in interstate commerce to haul or permit to be hauled or used on its lines, any car used in moving interstate traffic, not equipped with couplers coupling automatically by impact, as amended by Act March 2, 1903, c. 976, § 1, 32 Stat. 943 (U. S. Comp. St. Supp. 1909, p. 1143), which provides that the provisions of the original and amendatory acts relating to couplers, etc., shall be held to apply to all cars used on any railroad engaged in interstate commerce, a car with a defective coupler, billed for the repair shop, but which was not sent there but was left on a track in ordinary use in a switch yard, to be repaired by the

switchmen and then coupled to other cars, was being "used," within the meaning of the statute.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*

For other definitions, see Words and Phrases, vol. 8, pp. 7228–7237; vol. 8, p. 7825.

Duty of railroad companies to furnish safe appliances, see note to 37 C. C. A. 8.]

**2. RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—CARS "USED" IN INTERSTATE COMMERCE.**

A car with a defective coupler which, although empty, was brought into a station in an interstate train, left in the switch yards over night, and the next day taken out in another interstate train, was being used in interstate commerce within the meaning of the safety appliance act of March 2, 1893, c. 196, § 2, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), not only while being moved in the trains, but also while in the yards.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*]

**3. MASTER AND SERVANT (§§ 285, 289*)—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY—PROXIMATE CAUSE OF INJURY.**

Plaintiff's intestate, who was a switchman employed by defendant railroad company in its yards, while engaged in repairing a defective coupler on a car standing on a switch track, was caught between such car and others which moved against it, and killed. *Held*, in an action to recover for his death, that the question whether the defective coupler was a proximate cause of his injury, so as to bring the case within the safety appliance act of March 2, 1893, c. 196, § 8, 27 Stat. 532 (U. S. Comp. St. 1901, p. 3176), was properly submitted to the jury, as was also the question of the contributory negligence of deceased under the evidence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1016, 1089; Dec. Dig. §§ 285, 289.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action at law by Blanche Russell, administratrix of the estate of Harry Russell, deceased, against the Erie Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Writ of error to review a judgment in favor of the plaintiff in an action to recover damages for injuries resulting in the death of the plaintiff's intestate, Harry Russell, while employed by the defendant railroad company. There was evidence in the case sufficient to warrant the jury in finding the following facts which are especially relevant to the questions considered in the opinion:

The defendant railroad company is engaged in interstate commerce and owns a railroad extending from Port Jervis, N. Y., to Newburgh, N. Y., and also running into other states. Port Jervis is two or three miles east of the state line between New York and Pennsylvania. The defendant operates a local freight train between Newburgh and Port Jervis which, when running westerly, carries freight to stations on the road and picks up freight going to all points west, including points in other states. On the easterly trip western freight is carried to local points, and local freight is picked up for eastern points. On the afternoon of June 21, 1907, the car in question in this case was brought into Port Jervis in this train billed to the repair shops there. It had a defective coupler, the knuckle being gone. It was empty, and had been picked up at Greycourt, a station between Port Jervis and Newburgh. This train on said day carried freight going west of Port Jervis and to different states, and one of the cars bore the initials of the Boston & Maine Railroad. There was another car in the train which was also in a crippled

condition. The train, including the crippled cars, was left standing on a switch in the Port Jervis freight yard. Russell, the plaintiff's intestate, was one of the night switching crew in the yard. On this afternoon this crew had begun work drilling out and switching the cars from the different trains which had come into the yard from east and west. Before supper three cars had been placed on the No. 6 switch in the yard and left standing there. This switch had a slight grade. After supper the switching crew continued work and after some time ran the car in question attached to other cars upon said No. 6 switch. The intention of the switching crew was to repair the defective coupler and after repairing it to couple the train containing this car to the three cars aforesaid which had previously been left upon the switch. In backing up the train this car came in contact with the other three cars but was subsequently pulled away from them some five or six feet. The switching crew then started to look for a knuckle with which to repair the defective coupler. Knuckles were kept in various places in the yard, and the switchmen were accustomed to replace those found missing. Russell, the plaintiff's intestate, was the first to find one, and he went in between the cars and attempted to adjust it in the coupling apparatus, but the pin would not fit and one of the other men went to look for another pin. Russell was holding the knuckle in place with his back to said three standing cars when, without any apparent cause, they moved silently down and caught and crushed him, inflicting the injuries from which he died. The car in question was taken the next day on the easterly trip of said local freight train and hauled to Goshen, N. Y.

F. B. Jennings, for plaintiff in error.
George A. Clement, for defendant in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). The first question in the case is whether the acts of the defendant constituted a violation of the federal safety appliance act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174], as amended March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1909, p. 1143), the relevant sections of which are printed in the footnote.[1]

The first phase of this question is whether the car with the defective coupler was, at the time of the accident, in use within the meaning of the amended act. It is pointed out that the car was not being hauled at the time of the accident, but was standing upon a switch track for the insertion of the knuckle in the coupling apparatus, and it is contended that it was not then being used within the contemplation of the statute. We think upon the authority of Johnson v. Southern Pacific Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363, that this contention is not well founded. The car with the defective coupler was not withdrawn from use. Although billed to the repair shop it was

---

[1] Act of 1893, § 2: "That * * * it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its lines any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

Amendment of 1903, § 1: "* * * The provisions of * * * [the safety appliance act] * * * shall apply in all cases, whether or not the couplers brought together are of the same kind, mark or type and the provisions and requirements hereof and of said act relating to train brakes, automatic couplers, grabirons, and the height of drawbars shall be held to apply to all trains, locomotives, tenders, cars and similar vehicles used on any railroad engaged in interstate commerce. * * *"

not sent there, nor was it sent to any place used especially for making repairs. The insertion of the knuckle was a simple matter. The car was stopped only temporarily, and it was intended to couple it to the other cars as soon as repaired. These facts seem clearly to distinguish this case from those cases cited in the defendant's brief where accidents occurred when cars had been sent to repair shops or placed upon dead tracks used for repair purposes.

The second phase of the question of the application of the act is whether the car at the time of the accident was employed in interstate commerce. The car itself does not appear to have been used in any interstate business at the time in question. It was hauled empty from a New York point to Port Jervis in the same state, and the following day in like condition was hauled to another New York point. But the test of the application of the statute is the train rather than the car and we are of the opinion that there was evidence warranting a finding that the train in which this car moved into Port Jervis included other cars loaded with interstate shipments, and that the train in which it moved out of Port Jervis was of a similar character. Upon these facts it is held that the safety appliance act applies. U. S. v. International, etc., R. Co., 174 Fed. 638, 98 C. C. A. 392; Chicago, etc., R. Co. v. U. S., 165 Fed. 423, 91 C. C. A. 373, 20 L. R. A. (N. S.) 473; U. S. v. Wheeling, etc., R. Co. (D. C.) 167 Fed. 198; U. S. v. Erie R. R. Co. (D. C.) 166 Fed. 352. The fact that the accident occurred during switching operations, and not during either the regular western or eastern movement of the freight train, does not affect the application of the statute. Johnson v. Southern Pacific Co., supra; Wabash R. Co. v. U. S., 168 Fed. 1, 93 C. C. A. 393. Certainly if the car came into Port Jervis in the afternoon in an interstate train, and moved out of Port Jervis the next morning in another interstate train, the character of its use was not changed during the switching operations at night. Rosney v. Erie R. Co., 135 Fed. 311, 68 C. C. A. 155, is distinguished from the fact that in that case there was no proof of use in interstate commerce.

The second question of importance in the case is whether the trial court properly submitted to the jury the question whether the presence of the defective coupler was a proximate cause of the accident. It is urged with much force that that which caused the injury to the plaintiff's intestate was the unexpected movement of the three cars—an act unrelated to, and independent of, the act of repairing the coupler. Indeed, were the question to be decided free of authority, a majority of the court would have difficulty in holding that the repair of the coupler was a part of a coupling operation, and bore such a relation to the impact of the cars that the necessity for such repairs was an efficient cause of the accident. But still the reason why Russell went to the place where he was injured was the defective coupler, and if he had not gone there the accident would not have occurred. Moreover, it appears that it was intended to couple the car with the defective coupler to the standing cars as soon as the coupler should be repaired. This being true, and in view of the desirability of uniformity in the decisions of the courts of the different circuits in interpret-

ing this act, we feel it our duty to follow the decision of the Circuit Court of Appeals for the Eighth Circuit in Chicago, etc., R. Co. v. Voelker, 129 Fed. 522, 65 C. C. A. 226, 70 L. R. A. 264. The facts in that case are very similar to those appearing here. The person injured went upon the track to adjust a defective coupler in a car when, without warning, another car was shoved down upon him, inflicting the injuries complained of. It was held that the defective coupler was a proximate cause of the accident. In Chicago Junction R. Co. v. King, 169 Fed. 372, 94 C. C. A. 652, the facts even more closely resembled those appearing here, and a judgment for a person injured by reason of a defective coupler was affirmed, although the question of proximate cause does not appear to have been particularly considered. See, also, the decision of this court in Donegan v. Baltimore, etc., R. Co., 165 Fed. 869, 91 C. C. A. 555.

The third question in the case is whether the plaintiff's intestate was, as a matter of law, guilty of contributory negligence. An affirmative answer to this question requires the assumption that the cars which moved down and against Russell moved because he had failed in his duty to brake or block them. But this assumption cannot be made. The cars may have been properly blocked and the blocks loosened by the impact with the car in question shortly before the accident. The question of contributory negligence was one for the jury.

The remaining questions raised by the defendant disclose no prejudicial error.

The judgment of the Circuit Court is affirmed.