## NEW AMSTERDAM CASUALTY CO. v. IOWA STATE BANK.

(Circuit Court of Appeals, Eighth Circuit. December 12, 1921.)

No. 5667.

1. **Insurance ☞425—Policy held not to cover robbery from vault already open.**

   A policy insuring against loss by robbery from within the general inclosure reserved for the use of officers or employees, from an officer while transferring money from a vault outside the inclosure to the inclosure, or by compelling an officer to unlock or open the safe or vault, does not cover money taken by robbers from the safe or vault which had been previously opened preparatory to taking the money to the inclosure for the day's business, since the inclosure within the first clause cannot, in view of the second clause, include the vault.

2. **Courts ☞96(1)—Decision of Court of Appeals for another circuit should be followed unless different conclusions required.**

   The decision of the Court of Appeals for another circuit upon the exact question is ordinarily followed unless there are other circumstances requiring a different conclusion.

3. **Insurance ☞425—Clause specifying amount of insurance against certain risks held not to enlarge provisions defining loss.**

   Where a theft insurance policy had specifically defined the causes of loss insured against, a subsequent clause stating that the insurance attached in the amount of $20,000 to loss by robbery does not make the policy cover all loss by robbery, since that clause was made merely to limit the amount insured as to each hazard.

4. **Insurance ☞645(3)—Iowa statute does not prevent defense under general denial that loss was not covered.**

   Code Iowa 1897, §§ 3626, 3628, providing that an answer to an allegation of performance of all conditions precedent is not sufficient if it controverts by mere contradictions, but that it must specifically state the facts relied on, and section 3621, requiring a party who claims a right founded on an exception to state such exception particularly, do not preclude insurer whose answer was in effect a general denial from relying on the claim that the loss was not one covered by the policy.

   Stone, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Action by the Iowa State Bank against the New Amsterdam Casualty Company. Judgment for plaintiff, and defendant brings error. Reversed, and new trial ordered.

Oscar Strauss, of Des Moines, Iowa (Brockett, Strauss & Blake, of Des Moines, Iowa, on the brief), for plaintiff in error.

Charles Hutchinson, of Des Moines, Iowa (Clark, Byers & Hutchinson, of Des Moines, Iowa, on the brief), for defendant in error.

Before CARLAND and STONE, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. Whether or not the facts admitted or shown in this case justified a directed verdict in favor of the plaintiff bank is the question presented. By means of a robbery, the bank lost a large amount of money and securities taken from the unlocked safe kept within an unlocked vault. This action was brought upon an insurance policy which had been issued to the bank by the plaintiff in error. The insurer agreed to indemnify the bank:

"A. For all loss of money and securities in consequence of the felonious abstraction of the same during the day or night from the safe or safes (or from the vault, if contents of same are specifically insured) after said safe or safes or vaults have been duly closed and locked, described in said schedule, while located in said banking room, also described in said schedule, hereinafter called the premises, by any person or persons after forcible entry into such safe or safes or vault, or by any accomplice of such person or persons. In the event that the said safe or safes or vault are not locked by time lock, the company shall not be liable for loss of said money and securities feloniously abstracted therefrom unless said forcible entry is made therein by the use of tools, explosives, chemicals, or electricity directly thereupon.

"B. For all loss by damage to said money and securities and to said safe or safes or vault described in said schedule, or to the premises, or to the office furniture and fixtures therein, caused by such person or persons while making or attempting to make such entry into said premises, vault, safe, or safes.

"C. For all loss by robbery (commonly known as 'holdup') of money and securities: (1) From within the banking inclosure reserved for the use of the officers or office employés of the assured, while at least one officer or office employé of the assured is present and regularly at work in the premises: (2) From an officer or office employé of the assured while transferring the same during the assured's regular office hours, either way between the said banking inclosures and any safe or vault described in the schedule as located in the premises, outside of the said inclosures: (3) from within that part of the safe or safes or vault insured hereunder, caused by robbers during the day or night, by compelling under the threat of personal violence an officer or employé of the assured to unlock and open the safe or safes or vault."

The bank occupied a rectangular room fronting on Locust street in Des Moines, Iowa. A door opened into it from the street, and led into the portion of the room known as the lobby, or the portion of it commonly used by the public in transacting business with the officers and employés. The lobby was a little longer than half the length of the banking room. Opposite this lobby was: First, an office room containing several desks usually occupied by the chief officers of the bank, and separated from the lobby by a gate and a counter;

and, second, three latticed wire enclosures, commonly called cages, in which the tellers and others worked. These cages faced the lobby and had the usual wicket gates in front, and they opened in the rear into a narrow passageway leading from the office in front, and passing in the rear of the cages to the rear portion of the banking room. In this rear portion was a counter and partition adjoining the last cage and which separated the lobby from the room. There was also a vault in which there was a safe and a money chest. Near the vault a small room was partitioned off and used as a lavatory. The vault had a door upon which there was a combination and a time lock, and the chest door had a combination lock. The robbers were admitted to the lobby on the statement that they wished to deposit some money. It was a little before the regular time for opening the bank, but the assistant cashier and two other employés were already at work. The time lock on the safe had yielded and the cashier had worked the combination lock and opened the safe and had also opened the chest and had taken to the cages a portion of the money and securities to be kept there for ready use. The robbers suddenly confronted the employés with drawn revolvers and forced them to march behind the cages into the rear room and vault and then into the lavatory, where they were locked in. The robbers took a large amount of money from the safe, some from the chest, and some from the trays in the cages, and escaped by way of the door into the street. Upon these facts, is the loss covered by the policy of insurance? No particular question is made as to the money taken from the cages, but the amount so taken is not shown. The question that is argued is the liability for the money taken from the safe or chest within the vault.

[1] The language of clause C (1), which has been quoted, is relied upon by the insured as indemnifying it against this loss, as it interprets the word "inclosure" in the clause defining a robbery "from within the banking inclosure reserved for the use of the officers or office employés of the assured" to mean all that part of the banking room, except the lobby used by the bank's customers. In this view the vault is considered as a part of the inclosure. The first clause of paragraph C, if it stood alone, might be thus construed, but such a construction makes the following clause of this policy lead to an absurd result. The words "the premises" in that clause had already been defined in clause A as the banking room described in the schedule, and the schedule defined the location of the building at 603 Locust street in Des Moines, Iowa. Clause C (2) therefore has the same effect as if it read as follows:

"From an officer or office employé of the assured while transferring money or securities, during the assured's regular office hours, either way between the portions of the banking room (including the vault) which were not occupied by the lobby and any safe or vault which is described in the schedule as located in the banking room at 603 Locust street, and is also located in the lobby."

There was no safe nor vault located in the lobby, and such a location for a bank's safe or vault is unusual and perhaps unknown, and would be exceedingly inconvenient as well as dangerous to the safe-

ty of its contents while being transferred to and from it. This construction also impairs the ordinary meaning and scope of the words used in clause C (3) because if clause C (1) insured against any robbery from within the vault, or the safe or chest within the vault provided one or more of the bank's officers or office employés was present and regularly at work, it was needless to add in clause C (3) a more particular description of one kind of such robbery—that is, a robbery by compelling an officer or employé, at some time when an officer or employé was present and regularly at work, to unlock and open the safe or safes or vault.

[2] In construing a policy of insurance containing the same provisions which have been quoted, the Court of Appeals for the Fifth Circuit in the case of Franklin State Bank v. Maryland Casualty Co., 256 Fed. 356, 359, 361, 167 C. C. A. 526, decided, upon full consideration, that the insurance covers losses from safes by robbery only when an officer or employé is forcibly compelled to unlock and open it. The same court in the case of Mer Rouge State Bank v. Employers' Assur. Co., 270 Fed. 567, held that such insurance covered a robbery of securities from an unlocked safe provided the safe was within a locked vault, when the bank officer was forcibly compelled to unlock the vault. The decision of a Court of Appeals for another circuit upon the exact question is ordinarily followed, unless there are exceptional circumstances requiring a different conclusion. Bright v. State of Arkansas, 249 Fed. 950, 952, 162 C. C. A. 148; United States v. F. A. Marsily & Co., 165 Fed. 186, 187, 91 C. C. A. 220; Conant v. Kinney (C. C.) 162 Fed. 581; Kinney v. Conant, 166 Fed. 720, 721, 92 C. C. A. 410; Erie R. Co. v. Russell, 183 Fed. 722, 725, 106 C. C. A. 160. The difficulties arising from a contrary decision, which have been heretofore referred to, have led to concurrence with the conclusion announced in the case of Franklin State Bank v. Maryland Casualty Co.

[3] The policy in suit, after stating the liability of the insurer, as has been stated, made the liability subject to certain special agreements, and then stated that "the insurance provided by this policy" attached specifically:

. "(a) In amount of $20,000 to money and securities in safe No. 1. * * * (e) In amount of $20,000 to loss by robbery (commonly known as 'holdup')."

The insured claims that this was insurance against the loss of money and securities from the safe, whether locked or unlocked, but this ignores the fact that it was only the insurance provided by the policy, and which had been defined and limited as heretofore stated, which attached to the losses thus specially singled out. This specification was made in order to define and limit the amount insured as to each of these classes of hazards, but was not made to contradict or qualify the terms and limitations of the risks covered in prior portions of the policy.

[4] The insured also claims that sections 3626 and 3628 of the Iowa Code of 1897, which state that a defendant's answer to a plaintiff's pleading averring the performance of all conditions precedent in a contract sued upon is not sufficient if it controverts such obligations

by mere contradictions, but that the defendant must specifically state the facts relied upon, and that section 3621, which provides that, if a party claims a right founded on an exception of any kind, he shall state such exception particularly in his pleading, prevent the insurer from relying on any of the special agreements or conditions in this policy, because the answer was in effect a general denial. The answer did not rely upon the failure of the insured to perform any condition precedent, nor did it claim any right founded upon an exception, but claimed that the policy of insurance as pleaded by the insured did not cover a risk arising from the facts which have been stated, and a general denial properly controverted the insured's allegation, that it had sustained loss by robbery from within the banking inclosure.

The court should have directed a verdict in favor of the insurer as to the liability for money and securities taken from within the vault, safe and chest.

The judgment will be reversed, and a new trial ordered.

STONE, Circuit Judge (dissenting). It is here urged that the loss was not within the terms of the bond. The loss occurred just before bank opening time in the morning. The robbers, under pretense of desiring to make a deposit, gained admission to the building while three officers or employés were transferring funds from a safe in a vault to the tellers' cages and were otherwise preparing for the day's business. The robbers, with pistols, intimidated the bank employés and robbed the safe. The safe was in a vault which opened into the inclosure reserved for employés and officers. The policy covered robbery (by hold-up) of money and securities:

"(1) From within the banking inclosure reserved for the use of the officers or office employés of the assured, while at least one officer or office employé of the assured is present and regularly at work in the premises; (2) from an officer or office employé of the assured while transferring the same during the assured's regular office hours, either way between the said banking inclosures and any safe or vault described in the schedule as located in the premises outside of the said inclosures; (3) from within that part of the safe or safes or vault insured hereunder, caused by robbers during the day or night, by compelling under threat of personal violence an officer or employé of the assured to unlock and open the safe or safes or vault."

It is claimed that the safe, being in the vault, was not "within the banking inclosure" as used in above quotation; that the employés were not "regularly at work in the premises," and that the policy does not cover robbery from an unlocked safe.

I think the vault was clearly within the meaning of "banking enclosure reserved for the use of officers or office employés of the Assured." It was a place opening only into that portion from which the public was excluded and in which the officers and employés worked and it was used by them in the ordinary work of the bank. The safe being within the vault was therefore within the "banking inclosure."

I think there is no merit to the second point as the employés were regularly at work just before banking hours doing those things necessary and usual in preparation for the business of the day.

The third contention seems unsound to me. The provision as to loss within the banking inclosure naturally covers all money and securities within that inclosure, and I find no limitation, within that clause or elsewhere in the bond, which would except money or securities within that inclosure because they were in an open safe therein. The case of Franklin State Bank v. Maryland Casualty Co. (5th Cir.) 256 Fed. 356, 167 C. C. A. 526, is squarely to the contrary, but it is neither controlling nor convincing. There was no such binding obligation on the trial court to follow the Franklin Bank decision that its failure to do so was reversible error.

I think the judgment should be affirmed.